

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

HDM:JRS/DAS

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 17, 2024

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Carlos Watson and Ozy Media, Inc.
                Criminal Docket No. 23-82 (EK)

Dear Judge Komitee:

      The government respectfully submits this letter to inform the Court of the defendant Carlos Watson's violation of the Protective Order in the above-captioned matter. See ECF No. 54 (the "Protective Order"). Specifically, Watson disclosed a victim's internal communications — produced in discovery subject to the Protective Order — to his civil attorneys for use in a lawsuit against that victim and others. In light of that violation, the government respectfully requests that the Court modify the Protective Order to prevent future violations by Watson and to remedy his violation, as set forth below.

      In addition, as the Court is aware, willful violation of a court order is a felony. See 18 U.S.C. § 401. Because the facts set forth below establish probable cause to believe that Watson has committed that felony while on pretrial release, the government respectfully requests a hearing to determine if Watson's bail should be revoked. See 18 U.S.C. § 3148(b). The government further respectfully requests that, if Watson is to be represented by current counsel at such a hearing, the Court first conduct a Curcio hearing.

I.    Factual Background

      A.    The Instant Protective Order

      On February 22, 2023, the defendants were charged in the above-captioned indictment with conspiracy to commit securities fraud and conspiracy to commit wire fraud and, in the case of Watson, with aggravated identity theft. See ECF No. 1 (the "Indictment").

      On April 17, 2023, the parties jointly moved the Court to enter the Protective Order, which the Court ordered on April 21, 2023. See ECF Nos. 49, 54. Among other things,

the Protective Order states that, with certain limited exceptions, "the defendants and defense counsel may not disclose or disseminate Discovery Materials[1] to anyone who has not signed this Stipulation and Order" and that any further disclosure or dissemination of the Discovery Materials must be preceded by either notice to the government and the Court or an ex parte authorization from the Court. Protective Order ¶¶ 2-3. The Protective Order also requires the parties to notify the Court and opposing counsel if the Protective Order is violated. See id. ¶ 12.

The Protective Order was signed by then-defense counsel for Watson and counsel for Ozy Media, Inc. ("Ozy") and by Watson twice, once on his own behalf and once on Ozy's behalf; after Watson retained Ronald Sullivan as substitute counsel, Mr. Sullivan signed the Protective Order as well. See id. at 6-7; see also Ex. A. On the day that the Protective Order was entered, the government began its production of discovery materials. See ECF No. 55. To date, the government has produced well over one million documents, many of which contain identifying, financial and other private material for victims and witnesses.

### B. The Misuse of Discovery Materials in an Ozy Civil Suit

On December 21, 2023, Ozy filed a civil complaint against Benjamin Smith, Semafor, Inc. and Buzzfeed, Inc. alleging, among other things, misappropriation of trade secrets and breach of contract. See Ozy Media, Inc. v. Benjamin Smith, et al., No. 23-cv-9412 (E.D.N.Y.) (the "Civil Case"), ECF No. 1 (the "Ozy Complaint"). Buzzfeed is a victim in this case, identified in the Indictment as "Media Company 1."[2] Benjamin Smith is the former publisher of Buzzfeed News and the journalist who, when he was working for the New York Times, first reported on fraudulent conduct by Ozy and its executives.[3] Semafor is Mr. Smith's current media venture.

The gravamen of the Civil Case is the allegation that Mr. Smith stole Ozy's trade secrets after receiving internal information from Ozy — much of which was fraudulent, including fake revenue figures, fake descriptions of television deal terms and falsified contracts, see Indictment ¶¶ 36-42 — during acquisition conversations in 2019. In making those claims, the Ozy Complaint quoted multiple internal Buzzfeed emails in which Mr. Smith was communicating with Buzzfeed's Chief Executive Officer, Jonah Peretti. See Ozy Complaint ¶¶ 104, 106, 107.

Upon noticing these quotations from internal Buzzfeed emails, which did not appear to be addressed to or otherwise directed to Watson or Ozy, the government reviewed its productions and determined that each of these communications were produced as Discovery

---

[1] Capitalized terms not otherwise defined herein are defined in reference to the Protective Order.

[2] The government has conferred with counsel for Buzzfeed, who indicated that Buzzfeed consents to being publicly identified as a victim of the charged fraud.

[3] See, e.g., Ben Smith, Goldman Sachs, Ozy Media and a $40 Million Conference Call Gone Wrong, New York Times (Sept. 26, 2021), available at https://www.nytimes.com/2021/09/26/business/media/ozy-media-goldman-sachs.html.

2

Materials in the instant case, pursuant to the Protective Order. The government contacted counsel for Watson and Ozy, stating that certain paragraphs of the Ozy Complaint appeared to quote from internal Buzzfeed emails that had been produced as Discovery Materials and requesting confirmation that protected discovery material was not used for an improper purpose. Counsel for Watson and Ozy each represented that they had not provided any material or information for Ozy's civil case. See Ex. B. On December 22, 2023, the government asked counsel to consult with their clients and "confirm that neither Watson nor Ozy provided documents produced in discovery in our case to Ozy's civil counsel in its litigation against Buzzfeed and others." Id. On December 28, 2023, Watson's counsel responded and wrote, "It appears that documents subject to the protective order in the criminal case were inadvertently used in Mr. Watson's civil case." Id.

On January 2, 2024, Ozy's counsel in the civil action filed a letter in which they moved to amend the complaint to redact quotations of protected discovery material. See Civil Case, ECF No. 5. In this letter, civil counsel represented that they consulted with "criminal counsel" in this action, who "confirmed that the quoted material [in the Ozy Complaint] originated from documents produced in the criminal action and therefore does fall under the ambit of the Protective Order." Id. at 2. Civil counsel also acknowledged that the "Protective Order applies to *all discovery produced* in the criminal case and limits the use of any such documents to the criminal action." Id. at 1 (emphasis in original). Counsel in the civil action has since filed a redacted version of the Ozy Complaint. See Civil Case, ECF No. 6.

II.  Applicable Law

   A.  Fed. R. Crim. P. 16(d)(1)

A district court may enter orders regulating discovery "for good cause." Fed. R. Crim. P. 16(d)(1). "[T]he Federal Rules of Criminal Procedure leave it to the discretion of the Court to determine whether modification of an existing protective order is warranted." United States v. Maxwell, No. 20-CR-330 (AJN), 2020 WL 5237334, at *1 (S.D.N.Y. Sept. 2, 2020).

   B.  18 U.S.C. § 401

Title 18, Section 401 provides that a "Court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). "[A] federal court has the power to punish, by fine or imprisonment, a person who willfully violate[s] the specific and definite terms of a court order." Rojas v. United States, 55 F.3d 61, 63 (2d Cir. 1995). Disclosure of materials in violation of a protective order constitutes a violation of Section 401. See, e.g., United States v. Schulte, 578 F. Supp. 596, 618 (S.D.N.Y. 2021) (emailing discovery to a reporter in violation of a protective order is sufficient to sustain a conviction under 18 U.S.C. § 401(3)).

The elements of a violation of Section 401(3) are "(1) the issuance of the order, (2) the defendant's disobedience or disregard of the order, and (3) the defendant's knowledge and willfulness in disobeying the order." United States v. Donziger, No. 11-CV-691 (LAK), 2021 WL 3141893, at *66 (S.D.N.Y. July 26, 2021), aff'd, 38 F.4th 290 (2d Cir. 2022). "The

3

willfulness element of the offense requires proof of a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." Rojas, 55 F.3d at 63. "[W]illfulness may be inferred if a [defendant's] conduct discloses a reckless disregard for his . . . duty." Id.

Section 401 does not set a maximum penalty. See Frank v. United States, 395 U.S. 147, 149 (1969) ("Congress, perhaps in recognition of the scope of criminal contempt, has authorized courts to impose penalties but has not placed any specific limits on their discretion."). Accordingly, since the term of imprisonment authorized for a violation of Section 401 is more than one year, the offense is a felony. See 18 U.S.C. § 3559(a); see also Green v. Bd. of Elections of City of New York, 380 F.2d 445, 447 (2d Cir. 1967) (stating that 18 U.S.C. § 401(3) is a felony); United States v. Ware, No. 04 CR. 1224-01 (RWS), 2008 WL 5203658, at *5 (S.D.N.Y. Dec. 9, 2008) (same).

   C. 18 U.S.C. § 3148

Where the Government alleges that a defendant has committed a crime while on pretrial release, 18 U.S.C. § 3148(b) provides that the Court "shall" revoke pretrial release and detain a defendant if, after a hearing, the Court finds that two conditions have been met. As relevant here, the Court must first find that there is "probable cause to believe" that the defendant has committed a federal, state, or local crime while released on bail. 18 U.S.C. § 3148(b)(1)(A); United States v. LaFontaine, 210 F.3d 125, 130 (2d Cir. 2000). The Court must then find by a preponderance of the evidence either that "there is no condition or combination of conditions of release that will assure" that the defendant will not flee or pose a danger to the community or that the defendant "is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2)(A)-(B); see, e.g., United States v. Gotti, 794 F.2d 773, 777-78 (2d Cir. 1986) (preponderance of the evidence standard applies to Section 3148(b)(2)). Where there is probable cause to believe that the defendant has committed a felony while released on bail, then "a rebuttable presumption" arises that no combination of conditions will assure that the defendant "will not pose a danger" to the community. LaFontaine, 210 F.3d at 130 (citing Section 3148(b)(2)).

   D. Bail Hearings

The "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f)(2)(B). Therefore, "[a] detention hearing need not be an evidentiary hearing. While the defendant may present his own witnesses and cross-examine any witnesses that the government calls, either party may proceed by proffer and the rules of evidence do not apply." United States v. El-Hage, 213 F.3d 74, 82 (2d Cir. 2000) (citing 18 U.S.C. § 3142(f) and United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)); see also United States v. Galanis, 656 F. App'x 560, 562-63 (2d Cir. 2016) (district court did not err in proceeding based on the government's proffer and a review of the complaint, rather than on the basis of an evidentiary hearing, where defendant was given an opportunity to call witnesses and provide evidence of his own); LaFontaine, 210 F.3d at 130-31 (proffers are permissible both in the bail determination and bail revocation contexts).

III.     Argument

        A.     There Is Probable Cause To Believe That Watson Has Willfully Violated the Protective Order

There is no dispute that protected Discovery Material was provided to Watson's civil attorneys in clear violation of the Protective Order. There also appears to be no dispute that the person who wrongfully provided those materials was Watson. No one other than Watson and defense counsel (and their staff) were permitted to have access to the Discovery Materials, and defense counsel has made clear that defense counsel or their staff did not provide the documents to (in counsel's words) "Watson's [civil] lawyers" for "Watson's civil case." Ex. B. The only reasonable inference then is that Watson himself provided the Discovery Materials at issue to his civil lawyers.

Defense counsel asserted that the violation here was inadvertent. But that claim appears unlikely. The first sentence of the Protective Order, which Watson signed twice, explicitly states that the Discovery Materials "contain sensitive information." Protective Order at 1. The Protective Order goes on to explicitly state that Discovery Materials "may be used only for purposes of defending against the charges" in this criminal case. Id. ¶ 1. The Protective Order further explicitly states that Discovery Materials may not be shared with "anyone who has not signed this Stipulation and Order, other than to counsels' legal staff, counsel working on the related/overlapping federal and state enforcement and administrative actions, any potential experts (including consulting experts and expert witnesses), vendors, and/or investigators who first are advised of and agree to be bound by the terms of this Stipulation and Order." Id. ¶ 2. Considering that clear language, Watson must have known, and at a minimum, reasonably should have known, that the Protective Order he signed did not permit him to disclose the documents to his civil attorneys for use in a civil case.

Watson's conduct here must be seen in the context of a larger pattern of efforts by him to retaliate against witnesses, including Buzzfeed and its employees. As detailed in the government's detention memorandum, Watson previously unlawfully cut off legal fee advancement to Ozy officers and employees who he believed might be cooperating with the government's investigation. See ECF No. 6 at 4-5 & n.1. Watson has also repeatedly accused Mr. Smith and Mr. Peretti of fraudulent conduct in public filings and press releases, arguing that they potentially should be criminally charged. See ECF No. 84-1 at 6-10, 14, 27.[4] That pattern,

---

[4]     See also Press Release, Too Black for Business: Carlos Watson Defense Team Asks Justice Department to Conduct Racial Bias Investigation of Brooklyn Prosecutors After Revelations They Charge Blacks and Other People of Color in 90 Percent of Cases (June 21, 2023) (accusing Buzzfeed and Mr. Peretti of criminal conduct), available at https://www.prnewswire.com/news-releases/too-black-for-business-carlos-watson-defense-team-asks-justice-department-to-conduct-racial-bias-investigation-of-brooklyn-prosecutors-after-revelations-they-charge-blacks-and-other-people-of-color-in-90-percent-of-cases-301856388.html.

5

combined with the clear language of the Protective Order, undermines any claim that Watson inadvertently disclosed the Discovery Materials.

Watson's conduct also raises broader concerns. In complex investigations such as this one, it is common for the government to request that victims provide internal communications, many of which are sensitive. Victims provide these documents in part in reliance on the government's assurances that the documents will be appropriately protected. Moreover, it is common practice in this District for the government to provide such sensitive materials in discovery well in advance of trial, with minimal or no redactions, in reliance on the expectation that protective orders will be effective in protecting victims' privacy (and in many cases, safety). For Watson to then take a victim's documents and provide them to civil counsel for inclusion in a public lawsuit against that very victim shows a disregard for the principles underlying the Protective Order. Such conduct threatens to undermine not only the instant Protective Order, but the value of protective orders and the ability of the government and courts to protect victim information more broadly. It should not be tolerated.

> B. The Court Should Modify the Protective Order to Limit Watson's Access to Discovery Materials and to Remedy the Violation

Watson's violation of the Protective Order demonstrates that he cannot be trusted with the duty to protect the Discovery Materials as the order requires. The government therefore respectfully requests that the Court modify the Protective Order to limit Watson's ability to disseminate victim and witness information. Specifically, the government requests that the Court modify the Protective Order to forbid Watson and Ozy from having possession, custody or control of any Discovery Materials obtained from parties other than Watson himself or Ozy itself, except for records provided by service providers relating to Watson or Ozy (for example, Ozy's bank records or Watson's phone records).[5] Watson and Ozy should still be permitted to review such Discovery Materials, but only in the presence of defense counsel or defense staff.

Such a modification would appropriately prevent Watson from further disclosing materials provided by third parties without unduly limiting his ability to review such materials in order to prepare for trial. Cf. United States v. Moore, 322 F. App'x 78, 83 (2d Cir. 2009) ("The district court was within its discretion in preventing defendant's unsupervised possession of § 3500 material, which included statements by cooperating witnesses, to protect such witnesses from intimidation and retribution."). Watson would also retain the right to possess materials obtained from himself or Ozy, which — assuming he and Ozy have appropriately complied with the subpoenas in this case and the Court's order to compel —constitute a large portion of the relevant evidence.

The government further respectfully requests that the Court remedy Watson's violation by ordering that he retrieve and destroy any Discovery Materials he has disseminated in

---

[5] The government's discovery indexes provided to the defendants identify the producing party for all materials. If the Court enters the requested modification, the government is prepared to confer with defense counsel to identify which specific documents would and would not be covered.

violation of the Protective Order. In addition, to remedy Watson's improper use of the Discovery Materials, the government respectfully requests that the Court order that Watson and Ozy not rely on Discovery Materials in any manner in the Civil Case. Merely redacting the quotations from Discovery Materials in the public complaint is insufficient, as any use of the Discovery Materials in the Civil Case would violate the Protective Order. See Protective Order ¶ 1. A broader order is appropriate to prevent Watson from again attempting to improperly leverage his possession of Discovery Materials for any improper advantage in civil litigation. Thus, to the extent Discovery Materials underly any allegations in the complaint in the Civil Case — whether quoted or not — the Court should order Watson to strike such allegations from the complaint.

### C. The Court Should Hold a Detention Hearing to Determine Whether to Revoke Watson's Bail

As set forth above, there is probable cause to believe that Watson disseminated Discovery Materials in violation of the Protective Order, which is a violation of 18 U.S.C. § 401. Where, as here, there is probable cause to believe that a defendant has committed a felony, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). The defendant bears the burden "to rebut that presumption by coming forward with evidence that he does not pose a danger to the community." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if a defendant meets that burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

The Second Circuit has held that "pretrial detention [is] even more justified in cases of violations related to the trial process . . . than in cases where the defendant's past criminality [is] said to support a finding of general dangerousness." LaFontaine, 210 F.3d at 134. In keeping with that reasoning, district courts have revoked defendants' bail for conduct including violations of protective orders, see United States v. Pettway, No. 12-CR-103 (WMS), 2017 WL 3431402, at *1-2 (W.D.N.Y. Aug. 10, 2017), and for publicizing a witness's private documents for the purpose, in part, of harassing the witness, see United States v. Bankman-Fried, No. 22-CR-673 (LAK) (S.D.N.Y. Aug. 11, 2023), ECF No. 224 at 25-40.[6]

Moreover, prior bail conditions imposed on Watson to prevent such misconduct have proven ineffective. Because of Watson's prior retaliation, his bond includes an unusual provision explicitly prohibiting him "from attempting to obstruct the prosecution or retaliating against witnesses, or causing Ozy or anyone else to do so on his behalf." See ECF No. 11 (bail order imposing conditions "3, 4, 5 of Gvt Letter 2/23/23"); ECF No. 6 (Feb. 23, 2023 government letter detailing proposed conditions, including condition set forth above). Watson's

---

[6] Unlike the defendant's conduct here, the improper disclosure in Bankman-Fried did not violate a court order. See id. at 18 (argument by defense counsel that the conduct did not violate any court order and acknowledging, "Obviously, it would be a different situation after last week when the Court had issued the temporary order[, which would have forbidden such conduct], that would be a very different analysis.").

disregard of that condition now, months before trial, raises serious concerns about what further misconduct he may engage in or attempt as trial approaches and as more sensitive materials, including witness lists and witness statements, are disclosed.

The government therefore respectfully requests that the Court schedule a detention hearing to determine whether to revoke Watson's bail.

### D. The Court May Need to Hold a *Curcio* Hearing

To the extent Watson seeks to be represented by his current counsel at a detention hearing, counsel may be conflicted. In particular, to the extent Watson denies that he is the person who disclosed the Discovery Materials, his counsel Ronald Sullivan would be a witness against him, as Mr. Sullivan has already made clear that neither he nor Ozy's counsel (the two other potential candidates) made the disclosure. Further, to the extent Watson might seek to argue that he understood based on conversations with counsel that disclosure was permissible, Mr. Sullivan would also be a witness. Keeping Mr. Sullivan as counsel for the detention hearing would therefore require Watson to forgo such potential defenses.

Accordingly, unless Watson intends to obtain alternative counsel for the detention hearing, the government respectfully submits that the Court should first hold a hearing pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), to ensure that Watson understands any potential conflicts inherent in that representation and, if appropriate, to waive such conflicts. Specifically, the Court should:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986); see also Curcio, 680 F.2d at 888-90.

8

IV.     Conclusion

        For the foregoing reasons, the government respectfully requests that the Court (1) modify the Protective Order and make remedial orders, as set forth herein; (2) hold a hearing to determine whether to revoke Watson's bond; and (3) if necessary, hold a Curcio hearing.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   /s/
        Jonathan Siegel
        Gillian Kassner
        Dylan A. Stern
        Assistant U.S. Attorneys
        (718) 254-6293 (Siegel)

cc:   Clerk of the Court (via ECF)
      All Counsel of Record (via ECF)