JRS/GK/DAS
F. #2021R00900

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                         No. 23-CR-82 (EK)

CARLOS WATSON and
OZY MEDIA, INC.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTIONS IN LIMINE

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Jonathan Siegel
Gillian Kassner
Dylan A. Stern
Assistant United States Attorneys
    (Of Counsel)

# **TABLE OF CONTENTS**

Page

RELEVANT BACKGROUND ................................................................................................1

ARGUMENT .........................................................................................................................3

I.      Evidence or Argument Suggesting Selective Prosecution or Impugning the
        Government's Investigatory Conduct Should Be Precluded ................................................3

II.     The Court Should Preclude Evidence or Argument Regarding Watson's Race and
        His Personal or Family Background and Circumstances......................................................6

III.    The Court Should Preclude Evidence or Argument that Inflating Financial Figures
        Was a Common Practice in the Media Industry or the Venture Capital Space .................9

IV.     The Court Should Preclude Evidence of Purported Fraudulent Activity at
        Buzzfeed .........................................................................................................................12

V.      The Court Should Preclude the Defendants From Arguing That Any Victims
        Should Not Have Relied, or Did Not Rely, on Watson's or Conspirators' False
        Statements .......................................................................................................................14

VI.     The Court Should Preclude Watson's Proposed Expert Testimony ..................................15

        A.      Legal Standards....................................................................................................15

        B.      Discussion ............................................................................................................16

VII.    Statements By the Defendants and Their Agents and Co-Conspirators Are
        Admissible .......................................................................................................................26

        A.      Applicable Law....................................................................................................27

        B.      Watson's Statements Are Admissible Against Both Watson and Ozy.................31

        C.      Rao's and Han's Statements Are Admissible Against Both Watson and
                Ozy .......................................................................................................................32

        D.      Additional Portions of Defendants' Statements Are Inadmissible If
                Offered by Defendants .........................................................................................34

VIII.   The Government Should Be Permitted to Authenticate Documents Based on Their Production by Either Defendant In Response to Subpoenas ...............................................38

IX.   The Government Should Be Permitted to Introduce an Email from Ozy's Former Chief Financial Officer Reacting to an Attempt to Defraud a Financial Institution..........40

X.   The Government Should Be Permitted to Introduce Contemporaneous Statements by Victims...............................................................................................................45

    A.   Applicable Law ...................................................................................................45

    B.   Discussion ...........................................................................................................48

XI.   The Government Should Be Permitted to Introduce Evidence of Specific Acts of Dishonesty and Abuse by Watson and His Conspirators...................................................51

    A.   Conduct In Furtherance of the Conspiracy .........................................................51

    B.   Other Acts ...........................................................................................................52

XII.   The Government Should Be Permitted to Elicit Testimony From Victims Regarding Their Views on Materiality ..................................................................................56

XIII.   The Court Should Preclude Evidence and Argument Regarding Any Purported Belief of "No Ultimate Harm" to Investors ...........................................................57

XIV.   The Court Should Preclude Evidence and Argument That Watson Did Not Profit From the Scheme ............................................................................................................60

XV.   The Court Should Preclude Evidence or Argument Concerning the Circumstances of Watson's Arrest or the Legality of the Attendant Search...............................................61

    A.   Circumstances of Watson's Arrest.......................................................................61

    B.   Legality of the Search and Seizure of Watson's Devices ....................................62

XVI.    The Court Should Preclude Evidence or Argument Concerning Whether the
        Defendants Should Have Been Prosecuted Somewhere Other than this District .............63

XVII.   Defendants Must Disclose Rule 16(b) Discovery and Trial Exhibits To Be
        Introduced During Their Case-in-Chief.............................................................................66

XVIII.  Improper Use of Agent Reports to Impeach Witnesses Should Be Precluded.................70

XIX.    The Court Should Preclude Evidence or Argument Concerning Possible
        Punishment and Collateral Consequences ........................................................................72

XX.     Business Records and Public Can Be Authenticated Pursuant to Fed. R. Evid.
        902(4), 902(11) and (13)...................................................................................................73

CONCLUSION...............................................................................................................................76

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Anderson v. United States,
   417 U.S. 211 (1974) .................................................................................. 30, 31, 34

AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.,
   637 F. App'x 645 (2d Cir. 2016) ............................................................... 38

Bourjaily v. United States,
   483 U.S. 171 (1987) ................................................................................... 28

Braswell v. United States,
   487 U.S. 99 (1988) ................................................................................. 38, 39

Burnett v. United States,
   222 F.2d 426 (6th Cir. 1955) .................................................................... 10

Farganis v. Town of Montgomery,
   397 F. App'x 666 (2d Cir. 2010) ........................................................... 28, 42

Funk v. Belneftekhim,
   No. 14-CV-0376 (BMC), 2018 WL 11169575 (E.D.N.Y. Nov. 30, 2018) ............. 35

Gonella v. SEC,
   954 F.3d 536 (2d Cir. 2020) ....................................................................... 9

In re Reserve Fund Sec. Litig.,
   No. 09-CV-4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012) ................. 33

In re United States,
   945 F.3d 616 (2d Cir. 2019) ...................................................................... 11

Lego v. Twomey,
   404 U.S. 477 (1972) ................................................................................... 62

Melendez-Diaz v. Massachusetts,
   557 U.S. 305 (2009) ............................................................................. 73, 74

Mutual Life Ins. Co. v. Hillmon,
   145 U.S. 285 (1892) ................................................................................... 46

Neder v. United States,
   527 U.S. 1 (1999) ................................................................................. 14, 20

Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,
   135 F.3d 266 (3d Cir. 1998) (en banc) .................................................................. 9

Othman v. Benson,
   No. 13-CV-4771 (NGG), 2019 WL 1118035 (E.D.N.Y. Mar. 11, 2019) ................................ 13

Ozy Media, Inc. v. Benjamin Smith,
   No. 23-CV-9412 (FB) (E.D.N.Y.) ....................................................................... 12

Palermo v. United States,
   360 U.S. 343 (1959) .................................................................................. 71

Pappas v. Middle Earth Condo. Ass'n,
   963 F.2d 534 (2d Cir. 1992) ....................................................................... 27, 42

Quartararo v. Hanslmaier,
   186 F.3d 91 (2d Cir. 1999) ........................................................................... 30

SEC v. AT&T, Inc.,
   626 F. Supp. 3d 703 (S.D.N.Y. 2022) ................................................................. 50

Shaw v. United States,
   580 U.S. 63 (2016) ................................................................................... 58

Smith v. United States,
   188 F.2d 969 (9th Cir. 1951) ........................................................................ 10

Sparf v. United States,
   156 U.S. 51 (1895) ................................................................................... 65

Tome v. United States,
   513 U.S. 150 (1995) .................................................................................. 47

United States v. Aguilar,
   No. 20-CR-390 (ENV), ECF No. 238 (E.D.N.Y. Jan. 2, 2024) ........................................ 69

United States v. Aiyaswamy,
   No. 15-CR-568 (LHK), 2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) ................................... 68

United States v. Alamonte,
   956 F.2d 27 (2d Cir. 1992) ....................................................................... 70, 71

United States v. Al-Moayad,
   545 F.3d 139 (2d Cir. 2008) .......................................................................... 38

United States v. Amato,
   15 F.3d 230 (2d Cir. 1994) ........................................................................... 29

United States v. Aminy,
    15 F.3d 258 (2d Cir. 1994)...................................................................................... 53

United States v. Araujo,
    79 F.3d 7 (2d Cir. 1996)........................................................................................ 53

United States v. Armstrong,
    517 U.S. 456 (1996) .................................................................................................. 5

United States v. Arrington,
    867 F.2d 122 (2d Cir. 1988).............................................................................. 30, 43

United States v. Arroyo,
    477 F. App'x 771 (2d Cir. 2012) ........................................................................... 60

United States v. Battaglia,
    No. 05-CR-774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008)...................... 7

United States v. Bellomo,
    176 F.3d 580 (2d Cir. 1999).................................................................................... 30

United States v. Berg,
    710 F. Supp. 438 (E.D.N.Y. 1989) ......................................................................... 10

United States v. Berger,
    188 F. Supp. 2d 307 (S.D.N.Y. 2002)..................................................................... 58

United States v. Best,
    219 F.3d 192 (2d Cir. 2000).................................................................................... 47

United States v. Blake,
    195 F. Supp. 3d 605 (S.D.N.Y. 2016)..................................................................... 35

United States v. Blume,
    967 F.2d 45 (2d. Cir. 1992).................................................................................... 72

United States v. Boustani,
    No. 18-CR-681 (WFK), ECF No. 120 (E.D.N.Y. July 31, 2019) ........................... 69

United States v. Brooks,
    681 F.3d 678 (5th Cir. 2012) .................................................................................. 11

United States v. Brooks,
    No. 08-CR-35 (PKL), 2008 WL 2332371 (S.D.N.Y. June 4, 2008) ....................... 16

United States v. Brown,
    254 F.3d 454 (2d Cir. 2001).................................................................................... 46

United States v. Brown,
    293 F. App'x 826 (2d Cir. 2008) ................................................................... 63

United States v. Calderon,
    944 F.3d 72 (2d Cir. 2019).......................................................................... 57

United States v. Cardascia,
    951 F.2d 474 (2d Cir. 1991)........................................................................ 36

United States v. Carr,
    424 F.3d 213 (2d Cir. 2005)........................................................................ 65

United States v. Cicale,
    691 F.2d 95 (2d Cir. 1982)................................................................... 46, 47

United States v. Clemente,
    22 F.3d 477 (2d Cir. 1994).......................................................................... 22

United States v. Colon,
    880 F.2d 650 (2d Cir. 1989)........................................................................ 52

United States v. Connolly,
    No. 16-CR-370 (CM), 2019 WL 2125044 (S.D.N.Y. May 2, 2019)................... 10

United States v. Crumble,
    No. 18-CR-32 (ARR), 2018 WL 2016852 (E.D.N.Y. May 1, 2018) ..................... 56

United States v. Daniels,
    566 F. Supp. 3d 191 (E.D.N.Y. 2021) ............................................................ 13

United States v. Daskal,
    No. 21-CR-110 (NGG), 2023 WL 9424080 (E.D.N.Y. July 12, 2023).................. 19

United States v. Delvecchio,
    816 F.2d 859 (2d Cir.1987)......................................................................... 47

United States v. Desena,
    260 F.3d 150 (2d Cir. 2001)........................................................................ 33

United States v. Diaz,
    176 F.3d 52 (2d Cir. 1999).......................................................................... 51

United States v. Dominguez-Gabriel,
    511 F. App'x 17 (2d Cir. 2013) .................................................................... 30

United States v. Dupre,
    462 F.3d 131 (2d Cir. 2006)........................................................................ 16

United States v. Duque,
    123 F. App'x 447 (2d Cir. 2005) ........................................................... 64

United States v. Dzionara-Norsen,
    No. 21-454-CR, 2024 WL 191803 (2d Cir. Jan. 18, 2024) .................. 15, 19

United States v. Eisen,
    974 F.2d 246 (2d Cir. 1992) .................................................................... 30

United States v. Ellis,
    460 F.3d 920 (7th Cir. 2006) .................................................................. 74

United States v. Escalera,
    536 F. App'x 27 (2d Cir. 2018) .............................................................. 52

United States v. Everett,
    825 F.2d 658 (2d Cir. 1987) .......................................................... 53, 54, 55

United States v. Farhane,
    634 F.3d 127 (2d Cir. 2011) ..................................................................... 5

United States v. Fell,
    531 F.3d 197 (2d Cir. 2008) .................................................................... 43

United States v. Figueroa,
    No. 23-CR-161 (MAD), 2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023) ................... 44

United States v. Forrester,
    60 F.3d 52 (2d Cir. 1995) ....................................................................... 47

United States v. Fowler,
    932 F.2d 306 (4th Cir. 1991) ................................................................. 10

United States v. Frenkel,
    682 F. App'x 20 (2d Cir. 2017) .............................................................. 14

United States v. Garcia,
    291 F.3d 127 (2d Cir. 2002) .................................................................... 52

United States v. Gatto,
    986 F.3d 104 (2d Cir. 2021) ................................................................ 9, 57

United States v. Gigante,
    166 F.3d 75 (2d Cir. 1998) ............................................................ 28, 29, 33

United States v. Gole,
    21 F. Supp. 2d 161 (E.D.N.Y. 1997) ..................................................... 58

United States v. Gonzalez,
  399 F. App'x 641 (2d Cir. 2010) ...................................................... 36, 37

United States v. Gotti,
  457 F. Supp. 2d 395 (S.D.N.Y. 2006)................................................ 36

United States v. Graham,
  51 F.4th 67 (2d Cir. 2022) ...................................................... 44, 53, 54

United States v. Gramins,
  939 F.3d 429 (2d Cir. 2019)............................................................ 20

United States v. Gramins,
  No. 21-5, 2022 WL 6853273 (2d Cir. Oct. 12, 2022)........................... 25

United States v. Gupta,
  747 F.3d 111 (2d Cir. 2014)............................................................ 34

United States v. Harper,
  No. 05–CR–6068 (DGL), 2009 WL 140125 (W.D.N.Y. Jan. 20, 2009)................................. 36

United States v. Harris,
  491 F.3d 440 (D.C. Cir. 2007) .......................................................... 7

United States v. Holden,
  No. 13-CR-444 (AJB), 2015 WL 1514569 (D. Or. Mar 19, 2015) .......................................... 68

United States v. Hubbell,
  530 U.S. 27 (2000)........................................................................ 38

United States v. Inniss,
  No. 18-CR-134 (KAM), 2019 WL 6999912 (E.D.N.Y. Dec. 20, 2019) ................................ 9

United States v. Jackson,
  180 F.3d 55 (2d Cir. 1999)............................................................. 37

United States v. Jackson,
  792 F. App'x 849 (2d Cir. 2019) ...................................................... 54

United States v. Jadusingh,
  No. 18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) .................................... 72

United States v. James,
  No. 02-CR-778 (SJ), 2007 WL 2702452 (E.D.N.Y. Sept. 12, 2007) ...................................... 37

United States v. Jefferson,
  215 F.3d 820 (8th Cir. 2000) ........................................................... 29

United States v. Jeffrey Webb,
   No. 15-CR-252 (PKC), ECF No. 1275 (E.D.N.Y. Dec. 11, 2017)............................................. 5

United States v. Jimenez,
   513 F.3d 62 (3d Cir. 2008)....................................................................................................... 75

United States v. Johnson,
   688 F.3d 494 (8th Cir. 2012) .................................................................................................. 74

United States v. Johnson,
   507 F.3d 793 (2d. Cir. 2007)............................................................................................. 36, 37

United States v. Johnson,
   945 F.3d 606 (2d Cir. 2019).................................................................................................... 20

United States v. Jones,
   299 F.3d 103 (2d Cir. 2002)............................................................................................... 43, 45

United States v. Kahale,
   789 F. Supp. 2d 359 (E.D.N.Y. 2009) ................................................................................... 30

United States v. Kaiser,
   609 F.3d 556 (2d Cir. 2010).................................................................................................... 25

United States v. Kaufman,
   No. 19-CR-504 (LAK), 2021 WL 4084523 (S.D.N.Y. Sept. 8, 2021) ................................... 23

United States v. Kaufman,
   No. 19-CR-504 (LAK), 2021 WL 51521 (S.D.N.Y. Jan. 6, 2021)............................................ 7

United States v. Kay,
   513 F.3d 432 (5th Cir. 2007) .................................................................................................. 10

United States v. Kehoe,
   562 F.2d 65 (1st Cir. 1977)..................................................................................................... 50

United States v. Kirk Tang Yuk,
   885 F.3d 57 (2d Cir. 2018)...................................................................................................... 64

United States v. Knox,
   687 F. App'x 51 (2d Cir. 2017) ................................................................................................ 4

United States v. Komasa,
   767 F.3d 151 (2d Cir. 2014).................................................................................................... 74

United States v. Kone,
   216 F. App'x 74 (2d Cir. 2007) .............................................................................................. 27

United States v. Kurland,
    No. 20-CR-306 (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022)...................................29

United States v. Lange,
    834 F.3d 58 (2d Cir. 2016).................................................................................59, 63

United States v. Lanza,
    790 F.2d 1015 (2d Cir. 1986).......................................................................................13

United States v. Larkin,
    No. 12-CR-319 (GWF), 2015 WL 4415506 (D. Nev. July 20, 2015)...................................68

United States v. Larson,
    112 F.3d 600 (2d Cir. 1997).........................................................................................55

United States v. Leonard,
    529 F.3d 83 (2d Cir. 2008).........................................................................................59

United States v. Leonardi,
    623 F.2d 746 (2d Cir. 1980)...................................................................................70, 71

United States v. Levis,
    No. 10-4819-CR, 2012 WL 2914118 (2d Cir. July 18, 2012)...........................................59

United States v. Levy,
    731 F.2d 997 (2d Cir. 1984).........................................................................................52

United States v. Lights,
    No. 15-CR-721 (RWS), 2016 WL 7098633 (S.D.N.Y. Dec. 5, 2016)...............................62

United States v. Litvak ("Litvak I"),
    808 F.3d 160 (2d Cir. 2015)...................................................................................21, 57

United States v. Litvak ("Litvak II"),
    889 F.3d 56 (2d Cir. 2018).........................................................................20, 21, 56, 57

United States v. Livoti,
    196 F.3d 322 (2d Cir. 1999).........................................................................................55

United States v. Loera,
    No. 09-CR-466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018)....................................5

United States v. Mahaffy,
    No. 05-CR-613 (ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007)...............................35

United States v. Mahaffy,
    No. 05-CR-613 (ILG), 2007 WL 1213738 (E.D.N.Y. Apr. 24, 2007)...............................9, 19

United States v. Maldonado-Rivera,
　　922 F.2d 934 (2d Cir. 1990)..................................................................34

United States v. Malka,
　　602 F. Supp. 3d 510 (S.D.N.Y. 2022)....................................28, 29, 42

United States v. Malpeso,
　　115 F.3d 155 (2d Cir. 1997).................................................................8

United States v. Marin,
　　669 F.2d 73 (2d Cir. 1982)..................................................................35

United States v. Martoma,
　　993 F. Supp. 2d 452 (S.D.N.Y. 2014)..................................................23

United States v. McDaniel,
　　398 F.3d 540 (6th Cir. 2005) ..............................................................35

United States v. McDermott,
　　245 F.3d 133 (2d Cir. 2001)..........................................................22, 51

United States v. Mejia-Valez,
　　855 F. Supp. 607 (E.D.N.Y. 1994) ......................................................45

United States v. Mendlowitz,
　　No. 17-CR-248 (VSB), 2019 WL 6977120 (S.D.N.Y. Dec. 20, 2019) ...................9

United States v. Mermelstein,
　　487 F.Supp.2d 242 (E.D.N.Y.2007) ....................................................30

United States v. Michel,
　　879 F. Supp. 2d 291 (E.D.N.Y. 2012) ................................................75

United States v. Mickens,
　　926 F.2d 1323 (2d Cir. 1991)..............................................................52

United States v. Miller,
　　641 F. Supp. 2d 161 (E.D.N.Y. 2009) ..................................................7

United States v. Milstein,
　　401 F.3d 53 (2d Cir. 2005)..................................................................30

United States v. Morgan,
　　505 F.3d 332 (5th Cir. 2007) ..............................................................74

United States v. Napout,
　　No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017)...................67

United States v. Neumann,
   No. 21-CR-439-01 (NSR), 2023 WL 8700974 (S.D.N.Y. Dec. 14, 2023).................. 28, 29, 42

United States v. Novis,
   No. 20-CR-335 (JMA), 2023 WL 4746541 (E.D.N.Y. July 24, 2023) .................................... 25

United States v. Novis,
   No. 20-CR-335 (JMA), 2023 WL 6542110 (E.D.N.Y. Oct. 6, 2023) ..................................... 25

United States v. Ohle,
   441 F. App'x 798 (2d Cir. 2011) ........................................................................................ 63

United States v. Oldbear,
   568 F.3d 814 (10th Cir. 2009) ...................................................................................... 10, 11

United States v. Ozsusamlar,
   428 F. Supp. 2d 161 (S.D.N.Y. 2006)................................................................................. 55

United States v. Paccione,
   949 F.2d 1183 (2d Cir. 1991)............................................................................................... 7

United States v. Paulino,
   445 F.3d 211  (2d Cir. 2006)........................................................................................ 34, 43

United States v. Pedroza,
   750 F.2d 187 (2d Cir. 1984)................................................................................... 30, 31, 34

United States v. Persico,
   645 F.3d 85 (2d Cir. 2011)............................................................................................ 46, 47

United States v. Persico,
   No. 04-CR-911 (SJ), 2006 WL 3246922 (E.D.N.Y. Nov. 8, 2006) ....................................... 37

United States v. Pitre,
   960 F.2d 1112 (2d Cir. 1992)........................................................................................ 52, 55

United States v. Pitt-Des Moines, Inc.,
   168 F.3d 976 (7th Cir. 1999) .............................................................................................. 11

United States v. Purcell,
   967 F.3d 159 (2d Cir. 2020)......................................................................................... 48, 63

United States v. Qualls,
   613 F. App'x 25 (2d Cir. 2015) .......................................................................................... 74

United States v. Rahme,
   813 F.2d 31 (2d Cir. 1987)................................................................................................. 29

United States v. Reed,
　　773 F.2d 477 (2d Cir. 1985)................................................................. 64

United States v. Reese,
　　933 F. Supp. 2d 579 (S.D.N.Y. 2013).................................................. 6

United States v. Reevey,
　　364 F.3d 151 (4th Cir. 2004) .............................................................. 61

United States v. Regan,
　　103 F.3d 1072 (2d Cir. 1997)............................................................... 5

United States v. Riley,
　　621 F.3d 312 (3d Cir. 2010)......................................................... 31, 33

United States v. Rioux,
　　97 F.3d 648 (2d Cir. 1996)................................................................. 32

United States v. Rivera,
　　22 F.3d 430 (2d Cir. 1994)..................................................... 28, 34, 42

United States v. Rivera,
　　No. 13-CR-149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) .............................. 11

United States v. Rom,
　　528 F. App'x 24 (2d Cir. 2013) .......................................................... 75

United States v. Romanello,
　　No. 22-CR-194 (EK), ECF No. 109 (E.D.N.Y. Nov. 27, 2023)........................... 5

United States v. Rommy,
　　506 F.3d 108 (2d Cir. 2007)............................................................... 64

United States v. Rosado,
　　728 F.2d 89 (2d Cir.  1984) ................................................................. 4

United States v. Rossy,
　　No. 22-CR-550 (NSR), 2023 WL 8039500 (S.D.N.Y. Nov. 20, 2023)................... 13

United States v. Royer,
　　549 F.3d 886 (2d Cir. 2008)............................................................... 63

United States v. Russo,
　　302 F.3d 37 (2d Cir. 2002)........................................................ 27, 29, 33

United States v. Saldarriaga,
　　204 F.3d 50 (2d Cir. 2000)............................................................... 4, 5

United States v. Salerno,
  868 F.2d 524 (2d Cir. 1987)...................................................................... 29

United States v. Scarpa,
  913 F.2d 993 (2d Cir. 1990)...................................................................... 43

United States v. Schlesinger,
  372 F. Supp. 711 (E.D.N.Y. 2005) ........................................................... 29

United States v. Sedaghaty,
  728 F.3d 885 (9th Cir. 2013) ..................................................................... 31

United States v. Shkreli,
  779 F. App'x 38 (2d Cir. 2019) ................................................................. 59

United States v. Shyne,
  No. 05-CR-1067 (KMK), 2007 WL 1075035 (S.D.N.Y. Apr. 5, 2007).................. 26

United States v. Slapo,
  285 F. Supp. 513 (S.D.N.Y. 1968)............................................................. 10

United States v. Smith,
  198 F.3d 377 (2d Cir. 1999)...................................................................... 64

United States v. Smothers,
  652 F. Supp. 3d 271 (E.D.N.Y. 2023) ....................................................... 51

United States v. Smothers,
  No. 20-CR-213 (KAM), 2023 WL 348870 (E.D.N.Y. Jan. 20, 2023) ............. 67, 68

United States v. Sperling,
  726 F.2d 69 (2d Cir. 1984)........................................................................ 47

United States v. Sterling,
  No. 22-CR-247 (EK), 2023 WL 1967526 (E.D.N.Y. Feb. 12, 2023)...................... 56

United States v. Sterritt,
  No. 21-CR-193 (KAM), 2023 WL 7386660 (E.D.N.Y. Nov. 8, 2023).............. 8, 58

United States v. Stewart,
  433 F.3d 273 (2d Cir. 2006)............................................................ 16, 29, 62

United States v. Stewart,
  No. 03-CR-717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004)..................... 6

United States v. Swenson,
  298 F.R.D. 474 (D. Idaho 2014) ............................................................... 68

United States v. Terry,
   702 F.2d 299 (2d Cir. 1983)..................................................................................... 37

United States v. Thomas,
   116 F.3d 606 (2d Cir. 1997)............................................................................... 65, 73

United States v. Thompson,
   896 F.3d 155 (2d Cir. 2018)..................................................................................... 64

United States v. Tocco,
   135 F.3d 116 (2d Cir. 1998)............................................................................... 43, 46

United States v. Tracy,
   12 F.3d 1186 (2d Cir. 1993)..................................................................................... 26

United States v. Tuzman,
   No. 15-CR-536 (PGG), 2017 WL 6527261 (S.D.N.Y. Dec. 18, 2017)................... 17

United States v. Tzolov,
   642 F.3d 314 (2d Cir. 2011)..................................................................................... 64

United States v. Ulbricht,
   31 F. Supp. 3d 540 (S.D.N.Y. 2014)........................................................................ 60

United States v. Ulbricht,
   858 F.3d 71 (2d Cir. 2017)................................................................................. 15, 19

United States v. Vaccarelli,
   No. 20-3768-CR, 2021 WL 4805218 (2d Cir. Oct. 15, 2021)........................... 15, 19

United States v. Vidal,
   No. 22-2857-CR, 2024 WL 397630 (2d Cir. Feb. 2, 2024).................................... 26

United States v. Warren,
   No. 22-CR-231 (DLI), ECF Order (E.D.N.Y. Sept. 6, 2023).................................. 67

United States v. Watts,
   934 F. Supp. 2d 451 (E.D.N.Y. 2013) ..................................................................... 58

United States v. Weaver,
   860 F.3d 90 (2d Cir. 2017)................................................................................. 14, 15

United States v. Weiland,
   420 F.3d 1062 (9th Cir. 2005) ................................................................................. 74

United States v. Weingarten,
   19-CR-497 (NSR), 2024 WL 677995 (S.D.N.Y. Feb. 15, 2024) ...................... 29, 43

United States v. Williams,
    553 U.S. 285 (2008) ............................................................ 22

United States v. Wilson,
    493 F. Supp. 2d 484 (E.D.N.Y. 2006) ................................. 19

United States v. Yeley-Davis,
    632 F.3d 673 (10th Cir. 2011) ............................................ 74

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ................................................. 35

Zaken v. Boerer,
    964 F.2d 1319 (2d Cir. 1992) ............................................. 32

**Statutes**

18 U.S.C. § 3500 ..................................................................... 70, 71

**Rules**

Fed. R. Crim. P. 16 ............................................................... passim

Fed. R. Crim. P. 26.2 ............................................................. 69, 70

Fed. R. Evid. 104 ......................................................................... 62

Fed. R. Evid. 106 ..................................................................... 36, 37

Fed. R. Evid. 401 ................................................................... passim

Fed. R. Evid. 402 ................................................................... passim

Fed. R. Evid. 403 ................................................................... passim

Fed. R. Evid. 404(b) ................................................... 51, 52, 53, 55

Fed. R. Evid. 406 ......................................................................... 40

Fed. R. Evid. 608 ..................................................................... 12, 13

Fed. R. Evid. 611 ..................................................................... 12, 13

Fed. R. Evid. 613 ......................................................................... 70

Fed. R. Evid. 704 ......................................................................... 25

Fed. R. Evid. 801 ................................................................... passim

Fed. R. Evid. 802 ................................................................................... 27

Fed. R. Evid. 803(1) ............................................................... 45, 49, 50, 51

Fed. R. Evid. 803(2) ........................................................................ passim

Fed. R. Evid. 803(3) .............................................................. 35, 46, 49

Fed. R. Evid. 803(6) .................................................................. 40, 74, 75

Fed. R. Evid. 901 ...................................................................... 38, 39, 40

Fed. R. Evid. 902(11) ............................................................... 73, 74, 75

Fed. R. Evid. 902(12) ......................................................................... 75

Fed. R. Evid. 902(13) ................................................................... 73, 74

Fed. R. Evid. 902(4) ..................................................................... 73, 75

## Other Authorities

Ozy, https://www.ozy.com/. ................................................................ 32

Ronald Sullivan Law, PLLC, *Too Black for Business: Carlos Watson Defense Team Asks Justice Department to Conduct Racial Bias Investigation of Brooklyn Prosecutors After Revelations They Charge Blacks and Other People of Color in 90 Percent of Cases*, PR Newswire (June 21, 2023), https://www.prnewswire.com/news-releases/too-black-for-business-carlos-watson-defense-team-asks-justice-department-to-conduct-racial-bias-investigation-of-brooklyn-prosecutors-after-revelations-they-charge-blacks-and-other-people-of-color-in-90-percent-of-cases-301856388.html. ......................................... 4

The Troubling Case of Carlos Watson, Too Black for Business, https://www.tooblackforbusiness.org/cw/the-carlos-watson-case. ...................................... 8, 63

Too Black for Business, https://tooblackforbusiness.org. ............................................ 4

Weinstein's Federal Evidence ................................................................... 12, 31

Wright & Miller, Fed. Prac. & Proc. Evid. ................................................... 38

RELEVANT BACKGROUND[1]

On February 22, 2023, a grand jury in this District issued an indictment charging Carlos Watson with securities fraud conspiracy, in violation of 18 U.S.C. § 371 (Count One); wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count Two); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Three).  See ECF No. 1 (the "Indictment").  Ozy Media, Inc., was charged in Counts One and Two of the same Indictment.  See id.  As alleged in the Indictment, Ozy was a media and entertainment company whose businesses included digital newsletters, television production, podcasts and live events, the most prominent of which was a live festival known as "Ozy Fest."  Watson founded Ozy in 2012 and has served as the company's Chief Executive Officer since its inception.

At trial, the government intends to introduce evidence that between approximately 2018 and 2021, Watson and his co-conspirators, including Samir Rao and Suzee Han — Ozy's former Chief Operating Officer and Chief of Staff, respectively — orchestrated a scheme to defraud investors in and lenders to Ozy of tens of millions of dollars through fraudulent misrepresentations and omissions about key aspects of Ozy's business, including Ozy's financial performance, debts and audience size.[2]  In addition, the government intends to prove that Watson and his co-conspirators agreed to lie to prospective investors and lenders about not only Ozy's

---

[1]      The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.  In addition, the proffer of facts set forth in this motion as to any witness's anticipated testimony is a collection of the sum and substance of the witness's anticipated testimony and does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce through the respective witness's anticipated testimony.

[2]      Rao pleaded guilty to an information charging him with securities fraud conspiracy, wire fraud conspiracy and aggravated identity theft; Han pleaded guilty to an information charging her with securities fraud conspiracy and wire fraud conspiracy.

key performance metrics, but also who else might be investing in Ozy, the existence and size of acquisition offers received by Ozy, the existence and timing of financing rounds, and the existence and terms of Ozy's business contracts — going so far as to agree to create fake contracts with forged signatures to provide in due diligence.  In fact, on at least two sets of occasions, when faced with questions from lenders or potential investors, Watson and his co-conspirators assumed the identities of and impersonated actual media company executives to cover up their prior fraudulent misrepresentations, and Watson subsequently lied to investors and others about knowledge of and conduct regarding these impersonations.  In addition to the executives whose identities were used without their consent, victims and intended victims of the defendants' fraud include individual investors, domestic and foreign investment funds, a community bank, a venture capital lender, an investment bank and multiple media companies.

The government intends to introduce evidence that Watson and his co-conspirators agreed to make material misrepresentations to potential and actual investors, lenders and business partners through a variety of means, including in "pitch decks" that touted — falsely — Ozy's financial performance, via letters and charts that reiterated the false financial metrics and advertised investments that had not actually occurred, and through the circulation of fraudulent contracts and business documents.  And the government further intends to prove not only that Watson and his co-conspirators in fact disseminated this information, but also that this course of conduct was the result of a coordinated scheme, as demonstrated through frequent text messages, emails and in-person conversations between and among Watson, Rao and Han.

To date, Watson has filed two substantive motions.  First, Watson filed a motion to suppress the evidence from his electronic devices seized at the time of his arrest and for the return of those devices, arguing that his property was illegally seized and that the government's

unreasonable delay in obtaining a warrant required suppression.  <u>See</u> ECF No. 73.[3]  After the government filed both its opposition briefing and supplemental briefing requested by the Court, <u>see</u> ECF Nos. 79, 87, and Watson submitted an additional affidavit, <u>see</u> ECF No. 86, the Court denied the motion in a thorough memorandum and order, <u>see</u> ECF No. 96.  Specifically, the Court concluded that "the agents had probable cause to seize the Devices — whether under the plain view or search and seizure incident to arrest exception" and that "the record reflects that the government acted with the requisite diligence, in compliance with the applicable DOJ regulations, in applying for and obtaining a warrant."  ECF No. 96 at 24, 33.  Second, Watson filed a motion to dismiss the Indictment for selective prosecution, levying allegations that he was charged based on his race rather than his conduct.  <u>See</u> ECF Nos. 84, 84-1.  The government has opposed this motion, stating in the clearest possible terms that "race did not factor in any way into the defendant's charges.  To the contrary, as set forth in the Indictment, the defendant was charged solely because of his own brazen criminal scheme."  ECF No. 91 at 1-2; <u>see generally</u> <u>id.</u>  The Court has yet to rule on this motion.

Jury selection is scheduled for May 20, 2024, and the trial is set to begin with opening statements on May 29, 2024.

<u>ARGUMENT</u>

I.    <u>Evidence or Argument Suggesting Selective Prosecution or Impugning the Government's Investigatory Conduct Should Be Precluded</u>

The defendants and their counsel should be precluded from introducing evidence or making arguments before the jury that seek to impugn or otherwise put at issue the

---

[3]        Watson's brief on this matter was essentially the second round of briefing on the subject, as his prior counsel had moved for the return of the devices before withdrawing from the case.  <u>See</u> ECF No. 73 at 4 (citing prior counsel's motion at ECF No. 45 and noting that that brief was "freely quoted though substantially amended" in the motion to suppress filing).

government's conduct or motive in its prosecution of this matter.  Watson has already moved to dismiss the indictment against him on the basis that he has been singled out for prosecution on account of his race, see ECF Nos. 84, 84-1, and given his efforts to advance such arguments in his filings in this case, as well as to the general public, the government has significant concerns that he would seek to recycle these baseless and improper arguments before the jury.[4]  Such evidence and argument are irrelevant to innocence or guilt and present a substantial risk of misleading the jury or inviting jury nullification.  They should be categorically precluded.

Courts have consistently held — and often give jury instructions reflecting — that arguments regarding the government's decisions during an investigation and its motives and timing in bringing charges are irrelevant, unduly prejudicial and improperly invite jury nullification.  See, e.g., United States v. Knox, 687 F. App'x 51 (2d Cir. 2017) (instructing jury that "government is not on trial" is "appropriate"); United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (affirming jury charge stating that "[t]he government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand other things they could have done is wholly irrelevant"); United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-

---

[4]    See, e.g., Ronald Sullivan Law, PLLC, Too Black for Business: Carlos Watson Defense Team Asks Justice Department to Conduct Racial Bias Investigation of Brooklyn Prosecutors After Revelations They Charge Blacks and Other People of Color in 90 Percent of Cases, PR Newswire (June 21, 2023), https://www.prnewswire.com/news-releases/too-black-for-business-carlos-watson-defense-team-asks-justice-department-to-conduct-racial-bias-investigation-of-brooklyn-prosecutors-after-revelations-they-charge-blacks-and-other-people-of-color-in-90-percent-of-cases-301856388.html; Too Black for Business, https://tooblackforbusiness.org (defendant's website).

ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").  That is so because a claim that a prosecution has been brought selectively, or for improper motives, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  United States v. Armstrong, 517 U.S. 456, 463 (1996).  "Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997).

Courts consistently exclude a defendant's attack on the prosecution's motivation or methods in initiating its prosecution, including arguments that a defendant was improperly targeted.  See, e.g., United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Romanello, No. 22-CR-194 (EK), ECF No. 109 at 2 (E.D.N.Y. Nov. 27, 2023) ("The government's motives, when challenged, are a question for the Court and are not properly before the jury."); United States v. Loera, No. 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) ("[S]elective-prosecution argument by defendant to the jury would . . . be improper."); United States v. Jeffrey Webb, No. 15-CR-252 (PKC), ECF No. 1275, Trial Transcript at 3630:09-3632:12  (E.D.N.Y. Dec. 11, 2017) ("making argument in the vein of selective prosecution or the government's motive in conducting its investigation; for example, not getting certain evidence or pursuing certain leads and potentially focusing on certain defendants is . . . inappropriate" at trial).  The Court should do the same here.

The jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," Saldarriaga, 204 F.3d at 52, not on the government's purported motives. Evidence concerning such matters is irrelevant, and introduction of evidence or argument

concerning the motives behind the government's investigation would present an unacceptable risk of confusing the issues and misleading the jury.  The Court should therefore preclude any such evidence or argument, including arguments that other individuals have or have not been charged for similar conduct.  See, e.g., United States v. Stewart, No. 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]"); United States v. Reese, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("[A] defendant may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.").

II.     The Court Should Preclude Evidence or Argument Regarding Watson's Race and His Personal or Family Background and Circumstances

        The government respectfully submits that the Court should preclude any evidence or argument regarding Watson's race and his personal or family background and circumstances, with a narrow exception for Watson providing limited background information about himself if he testifies in his defense.  The Court's power to exclude such evidence and arguments — which would invite the jury to render a verdict based on matters irrelevant to the law — arises from Rules 401, 402 and 403 of the Federal Rules of Evidence.  Specifically, evidence is admissible only if it is both relevant — having "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401(a) — and not otherwise inadmissible, Fed. R. Evid. 402.  Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.

        "District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice."  United States v. Miller, 641 F.

Supp. 2d 161, 167 (E.D.N.Y. 2009).  Courts have broad discretion to exclude evidence if it has

"an undue tendency to suggest decision on an improper basis, commonly, though not necessarily,

an emotional one."  Fed. R. Evid. 403 advisory committee's notes.  Indeed, when evidence is of

limited probative value, it should be excluded if it has the "potential to engender sympathy in an

inappropriate effort to excuse [a] defendant's commission of the charged offenses."  Miller, 641

F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991)

(affirming preclusion of evidence that the defendant had son with cerebral palsy); United States

v. Kaufman, No. 19-CR-504 (LAK), 2021 WL 51521, at *2 (S.D.N.Y. Jan. 6, 2021) (precluding

evidence and argument "concerning defendant's family background, health conditions, other

personal factors unconnected to guilt or innocence" because it "would invite the jury to

determine the case on the basis of factors that are not relevant to guilt or innocence"); United

States v. Battaglia, No. 05-CR-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008)

(precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of

whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447

(D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in

the sympathetic light of a dedicated family man").

At this time, it is unclear what evidence, if any, Watson may seek to introduce

concerning any of his personal or family circumstances, and what arguments he may make

regarding those circumstances and his race more broadly.  However, on his website, Watson has

made race a central focus, and he has claimed that he and his family "put [their] entire life

savings into the company (more than $5M), double and triple mortgaged [their] homes,

borrowed from friends and family and are now living day to day."  The Troubling Case of Carlos

Watson, Too Black for Business, https://www.tooblackforbusiness.org/cw/the-carlos-watson-

case.  He also claims that he started Ozy when he "moved from NY back to the Bay Area to take care of [his] ailing mom," with her "encouragement and help."  Id.  This type of evidence regarding Watson's personal circumstances has no tendency to make any "facts of consequence" more or less probable and should be precluded.  Fed. R. Evid. 401.

Even assuming, arguendo, that Watson's race or personal or family circumstances had some limited probative value, that value would be far outweighed by the danger of unfair prejudice to the government.  Exclusion is appropriate where the admission of evidence creates "risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme."  Fed. R. Evid. 403 advisory committee's notes.  The prejudice to the government resulting from the admission of evidence or argument regarding Watson's race and personal or family circumstances far outweighs any probative value such testimony might have.  Rather, the clear purpose of such testimony would be to distract the jurors from the relevant facts and seek to influence their verdict through sympathy or bias.  Such testimony should be precluded.  See United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (excluding evidence and precluding argument on issues that had "little or no relevance" to the charged crimes and might encourage jury nullification); United States v. Sterritt, No. 21-CR-193 (KAM), 2023 WL 7386660, at *4 (E.D.N.Y. Nov. 8, 2023) ("[P]articularly where such evidence [of personal, health, or family circumstances] has limited probative value and has potential to engender sympathy in an inappropriate effort to excuse a defendant's commission of the charged offenses, such evidence may be excluded, pursuant to Fed. R. Evid. 403.").

III.    The Court Should Preclude Evidence or Argument that Inflating Financial Figures Was a
        Common Practice in the Media Industry or the Venture Capital Space

        The defendants have suggested that they may seek to advance a defense that they

should be excused from their conduct because misrepresenting material company performance

metrics was common in the media industry or within Silicon Valley startup culture.  See, e.g.,

Jan. 18, 2024 Status Conf. Tr. 18-19 (claiming that "the nature of this industry" is that venture

capitalists engage in "puffery" and "make claims about the nature of their products").  This is a

reformulation of the improper selective prosecution defense described above — a claim that the

defendants have been unfairly targeted for conduct that is widespread in their field.  This

"everybody was doing it" defense is both irrelevant and unduly prejudicial, and evidence and

argument in support of such a defense should be precluded.

        It is well established "that others . . . engaging in improper behavior does not

make it lawful."  United States v. Gatto, 986 F.3d 104, 129 (2d Cir. 2021); see also Gonella v.

SEC, 954 F.3d 536, 549 (2d Cir. 2020) ("[T]he fact that behavior is common does not mean it is

not fraud."); Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 274 (3d Cir.

1998) (en banc) ("Even a universal industry practice may still be fraudulent.").  Courts in this

Circuit have consistently reiterated that evidence relating to industry practice "is entirely

irrelevant and improper" because "[i]ndustry practice is not a defense" to a federal criminal

charge.  United States v. Mahaffy, No. 05-CR-613 (S-3) (ILG), 2007 WL 1213738, at *3 n.5

(E.D.N.Y. Apr. 24, 2007); see also United States v. Mendlowitz, No. 17-CR-248 (VSB), 2019

WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019) ("[T]he fact that certain conduct may be common

or general practice in an industry was not relevant to the jury's consideration of the conduct of

[the defendant], and is not a defense to wire fraud."); United States v. Inniss, No. 18-CR-134

(KAM), 2019 WL 6999912, at *7 (E.D.N.Y. Dec. 20, 2019) (precluding "any evidence that [the

defendant's employer] has paid bribes to other individuals, or argument that bribery may have been commonplace or part of industry practice" because such evidence "would not shed any light on [the defendant's] state of mind"); United States v. Connolly, No. 16-CR-370 (CM), 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019) ("'[E]verybody is doing it' is not a defense to the crime of wire fraud or conspiracy to commit wire fraud; just as 'everybody speeds' is not a defense if your car happens to get picked up on the radar."); United States v. Berg, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (limiting testimony concerning the "custom of other arms dealers in complying with arms export laws" because such evidence was "irrelevant" to the state of mind of the defendants), aff'd in part, rev'd in part on other grounds sub nom United States v. Schwartz, 924 F.2d 410 (2d Cir. 1991); United States v. Slapo, 285 F. Supp. 513, 513-14 (S.D.N.Y. 1968) ("[W]e have not yet reached the point, at least in this court's view, where an industry custom and practice serves to repeal criminal laws.").

This bar on the "everybody was doing it" defense has been upheld by numerous Courts of Appeals as well. See, e.g., United States v. Oldbear, 568 F.3d 814, 821 (10th Cir. 2009) (concluding that "only the defendant's actions and state-of-mind [are] material to [his] guilt" and "the fact that others may have [engaged in] improper conduct does nothing to excuse" his conduct); United States v. Kay, 513 F.3d 432, 442 (5th Cir. 2007) (affirming district court's preclusion of "'everybody-is-doing-it' defense"); United States v. Fowler, 932 F.2d 306, 315-16 (4th Cir. 1991) (affirming district court's exclusion of testimony supporting the "everybody-does-it defense" as irrelevant); Burnett v. United States, 222 F.2d 426, 427 (6th Cir. 1955) ("No custom is a justifiable defense for violation of the criminal code of the United States."); Smith v. United States, 188 F.2d 969, 970 (9th Cir. 1951) ("Custom, involving criminality, cannot justify

10

a criminal act.").  This Court should follow suit and preclude any evidence or argument that falsifying or inflating material information was common or prevalent in the defendants' industry.

Even if it were somehow relevant, argument or evidence that misrepresenting material information was widespread or commonplace would risk confusing the jury and invite the jury to nullify on the ground that it is unfair that Watson and Ozy are being prosecuted, or that Watson and Ozy had no choice but to break the law to succeed.  These risks of prejudice and jury nullification warrant the exclusion of such evidence.  See United States v. Pitt-Des Moines, Inc., 168 F.3d 976, 991 (7th Cir. 1999) (affirming exclusion of evidence of industry custom and practice "based on a fear that the jury might find [the defendant] not guilty because 'everyone does it'"); see also In re United States, 945 F.3d 616, 630 (2d Cir. 2019) ("Evidence admitted solely to encourage nullification is by definition irrelevant, and thus inadmissible, regardless of what other evidence might be introduced at trial."); United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (district court may consider "the risk of jury nullification" in determining admissibility of evidence under Fed. R. Evid. 403).  Apart from the risk of nullification, such evidence would also waste time and distract from the issues at the trial.  See United States v. Brooks, 681 F.3d 678, 709 (5th Cir. 2012) (affirming district court's exclusion of defendant's proffered industry practice evidence that "other energy companies were also submitting similarly false data" because evidence that fraudulent practices may be common in a particular industry "pose[s] a threat of confusing the jury and detracting from relevant information about the conduct of the actual parties"); Oldbear, 568 F.3d at 821 (affirming exclusion of customary practice evidence under Rule 403 because it was likely to create a "sideshow from which the jury could have gleaned little valuable information").

For the foregoing reasons, the Court should preclude under Rules 402 and 403 any argument that invites the jury to excuse the defendants' conduct because the practice of misrepresenting material information was common in the media industry or in Silicon Valley startup culture and exclude evidence in support of such an impermissible argument.

IV.    The Court Should Preclude Evidence of Purported Fraudulent Activity at Buzzfeed

As the Court is aware, in motions in this case and civil filings, the defendants have repeatedly accused one of the victims in this case, Buzzfeed, of various forms of misconduct.  See ECF No. 84 at 6-10; Ozy Media, Inc. v. Benjamin Smith, et al., No. 23-CV-9412 (FB) (E.D.N.Y.).  The government respectfully requests that the Court preclude pursuant to Fed. R. Evid. 403 any evidence or argument regarding those accusations, including during cross-examination of any Buzzfeed witnesses.

At the outset, as discussed above, any accusations regarding any other company and their conduct have no relevance to this case and can serve only to distract the jury from the issues at hand and encourage nullification.  See pp. 9-12.  Further, to the extent the defendants argue that accusations as to Buzzfeed specifically are relevant to impeach the credibility of Buzzfeed witnesses, that argument should be rejected.

The only plausible basis to cross-examine Buzzfeed witnesses about the defendants' accusations is Fed. R. Evid. 608(b)(1), under which the Court "may" allow cross-examination regarding "specific instances of a witness's conduct . . . if they are probative of the character for truthfulness or untruthfulness of . . . the witness."  That rule "emphasizes the discretionary power of the trial court" to limit cross-examination, which "arises from the overriding safeguards of Rule 403 . . . and Rule 611," 4 Weinstein's Federal Evidence § 608.22(2)(c)(ii), the latter of which instructs courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses

12

from harassment or undue embarrassment," Fed. R. Evid. 611(a)(3).  See also United States v. Daniels, 566 F. Supp. 3d 191, 194 (E.D.N.Y. 2021) ("In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by Rules 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b).").

 Here, the probative value of any such questioning would be nonexistent. Although the defendants have attacked Buzzfeed for failing to live up to financial projections, they have not identified any actual dishonesty by anyone at Buzzfeed.  See ECF No. 84 at 6-10. Absent some indication of dishonesty, cross-examination about business failings is impermissible under Rule 608(b).  See United States v. Lanza, 790 F.2d 1015, 1020 (2d Cir. 1986) (affirming preclusion of cross-examination regarding witness's failure to repay debts). And even if some dishonesty were alleged, the defendants have offered no actual evidence of such dishonesty, significantly weakening any argument for cross-examination.  Cf. United States v. Rossy, No. 22-CR-550 (NSR), 2023 WL 8039500, at *5 (S.D.N.Y. Nov. 20, 2023) (precluding cross-examination regarding unsubstantiated disciplinary claims); Othman v. Benson, No. 13-CV-4771 (NGG), 2019 WL 1118035, at *5 (E.D.N.Y. Mar. 11, 2019) (same).

 Such questioning also raises significant risks of prejudice, wasted time, and witness harassment.  Although the defendants have offered no basis, let alone a good-faith basis, to believe that any Buzzfeed witness would admit to dishonest conduct if cross-examined about the defendants' accusations, the mere questioning on those subjects could confuse the jury and needlessly embarrass the witness, all without any evidentiary value.

Accordingly, the defendants should be precluded from introducing evidence, cross-examining witnesses or making any arguments regarding any purported misconduct by Buzzfeed or its employees.

V.    The Court Should Preclude the Defendants From Arguing That Any Victims Should Not Have Relied, or Did Not Rely, on Watson's or Conspirators' False Statements

To the extent that the defendants intend to argue that any of their victims should not have relied on misstatements by Watson or his conspirators or that any victims did not in fact rely on such fraudulent misstatements, those arguments should be precluded. As the Supreme Court and the Second Circuit have held, reliance is not an element of the federal fraud statutes. See Neder v. United States, 527 U.S. 1, 24-25 (1999) ("The common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes."); United States v. Weaver, 860 F.3d 90, 96 (2d Cir. 2017) ("reliance is not an element of criminal fraud"). Thus, "the government need not prove that the victims of the fraud were actually injured, but only that defendant[] contemplated some actual harm or injury to [his] victims." Weaver, 860 F.3d at 95.

Similarly, "a victim's negligence is not a defense under the federal fraud statutes," United States v. Frenkel, 682 F. App'x 20, 22 (2d Cir. 2017), and it would not be a defense even if the victim were in fact not fooled, see Weaver, 860 F.3d at 97 ("No customers had to be tricked into purchasing the [fraudulently described items] in order for [the defendant] to be charged criminally because the government is not required to prove that an intended victim was actually defrauded to establish guilt of mail or wire fraud."). Thus, any such evidence or arguments would have no probative value and would only confuse the jury.

The defendants should also not be permitted to argue that any false statements were mitigated by contractual waivers of reliance. "While such disclaimers may in some

circumstances defeat a civil claim for damages based on fraud, they do not bear on the defendant's criminal liability."  Id. at 95.  "Fraudsters may not escape criminal liability for lies told to [victims] . . . by inducing them to sign a contract containing disclaimers of reliance."  Id. at 96.

VI.     The Court Should Preclude Watson's Proposed Expert Testimony

    A.     Legal Standards

        1.     Rule 16(b)(1)(C)

Fed. R. Crim. P. 16(b)(1)(C)(iii) requires a defendant to disclose, for each expert witness, (1) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;" (2) "the bases and reasons for them;" (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years;" and (4) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."  Such disclosures must be made in accordance with the schedule set by the Court and in any event must be disclosed "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence."  Fed. R. Crim. P. 16(b)(1)(C)(ii).

"Where a defendant fails to comply with such disclosure requirements, a court may prohibit the party from introducing the evidence at trial."  United States v. Dzionara-Norsen, No. 21-454-CR, 2024 WL 191803, at *3-4 (2d Cir. Jan. 18, 2024) (affirming preclusion of defense expert where notice provided "a brief summary of the proposed testimony, but failed to provide a full statement of [the expert's] opinions and reasons for them"); United States v. Vaccarelli, No. 20-3768-CR, 2021 WL 4805218, at *1 (2d Cir. Oct. 15, 2021) (affirming preclusion of defense expert where notice "failed to specify the basis for his opinion"); United States v. Ulbricht, 858 F.3d 71, 115 (2d Cir. 2017) (affirming preclusion of defense experts

where disclosures "were plainly inadequate" in that they "merely listed general and in some cases extremely broad topics on which the experts might opine" and did not "describe the bases for the experts' opinions").

    2.    <u>Admissibility</u>

Under Fed. R. Evid. 402, "[i]rrelevant evidence is not admissible."  Thus, a district court may preclude a proposed expert's testimony if the testimony is not relevant to the issues at trial.  <u>See, e.g.</u>, <u>United States v. Stewart</u>, 433 F.3d 273, 311-12 & n.10 (2d Cir. 2006) (affirming preclusion of expert testimony; "expert testimony regarding an issue not relevant to the charges under consideration has the potential to confuse the jury"); <u>United States v. Brooks</u>, No. 08-CR-35 (PKL), 2008 WL 2332371, at *2 (S.D.N.Y. June 4, 2008) (precluding expert testimony as "irrelevant to this trial," noting "substantial risk that such testimony would confuse the jury").

Even if the proposed testimony has some relevance, a district court may preclude testimony if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  <u>See</u> Fed. R. Evid. 403; <u>see also</u> <u>United States v. Dupre</u>, 462 F.3d 131, 138 (2d Cir. 2006) (district court properly precluded expert testimony under Rule 403).

    B.    <u>Discussion</u>

    1.    <u>Watson's Experts Should Be Precluded for Failure to Comply with Rule 16</u>

Watson's expert notice (ECF No. 117 ("Def. Notice")) fails utterly to comply with Rule 16(b)(1)(C).  Although the Court authorized the defendants not to name particular witnesses at this time, Watson's notice fails to give "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" or "the bases and reasons

for them." Fed. R. Crim. P. 16(b)(1)(C)(iii).  Instead, Watson provides a partial summary of

potential opinions that is so high level as to border on meaningless.

   For example, as to Expert #1, Watson states that the "expert will offer an opinion,

relying on the academic literature, on how venture capitalists make decisions, with an emphasis

on the role revenue projections play in financing decisions in early-stage investing."  Def. Notice

2.  But Watson does not say what the opinion will be.  Will the expert opine that revenue

projections play an important role?  An unimportant role?  The government and the Court are left

to guess.  Similarly, Watson states that the "expert will rely on the significant academic research

that stands for the proposition that early-stage investors have varied reliance on a company's

asserted revenue projections."  Id.  Watson does not identify any of this "significant academic

literature," even though he is required to do so.  See United States v. Tuzman, No. 15-CR-536

(PGG), 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) ("If proposed expert testimony is

based on a 'review and analysis of scientific, medical and other peer reviewed literature,' the

defendant must supply the literature upon which the expert will rely.").  Nor does he explain

what "varied reliance on a company's asserted revenue projections" means — does it mean that

for some investors revenue projections are the most important factor while for other investors

they are only one important factor?  Will this expert opine that there are investors for whom

revenue projections are unimportant?  What, if anything, will this expert say about "reasonable

investors," the focus of the law's objective analysis of materiality?  Again, the Court and the

government are left to guess.

   These significant ambiguities undermine the purpose of the expert notice.  In

addition to prejudicing the government by depriving it of the opportunity to meet the evidence,

Watson has deprived the Court of the ability to make an educated determination of admissibility.

17

As set forth below, depending on what the expert would actually say, the testimony may or may not be admissible. The Court should not have to make its admissibility rulings based on speculation of what an expert might say.

The disclosures as to Expert #2 and Expert #3 are no better. Watson claims that Expert #2 will supposedly "opine on whether various financial officers at OZY Media understated its revenues, and that the actual revenue of OZY Media was significantly closer to the revenue numbers the government is alleging that Mr. Watson misrepresented to investors." Def. Notice. But Watson offers no hint as to what the supposedly actual revenue will be or what the basis for that opinion will be. As set forth below, the basis is critical to the admissibility determination — if the basis is an entirely post hoc analysis, then it is irrelevant to Watson's contemporaneous understanding of actual revenue and thus inadmissible. See pp. 22-23. Further, Expert #3 "will testify to the unique issues experienced by historically disadvantaged groups and what the norms of the venture capitalist industry are with regard to 'bluffing' or 'puffery'" (id.) — but Watson does not share what those norms are. Nor does Watson disclose in what ways "the norms and expectations for historically disadvantaged groups are different and distinct from majority entrepreneurs," or the basis for any such opinion. Id.

Watson claims that his failure to comply with Rule 16(b)(1)(C) was authorized by the Court, which "permitted [defense] counsel to tender a letter in lieu of expert disclosures." Id. at 1. That mischaracterizes the record. At the January 18, 2024 status conference, the Court set a deadline of February 23, 2024 for "expert disclosure under Rule 16, and even if you don't have a specific expert engaged by that point, it might behoove you, I don't know, to say as much as you can about what the testimony you envision eliciting is, even with the identity of the witness to be disclosed later." Jan. 18, 2024 Tr. 20:3-9. Thus, while the Court excused Watson from

identifying a specific witness at this time, the Court emphasized that the other portions of Rule 16(b)(1)(C) remained in effect and that "everybody has to comply with the rules of discovery in their entirety irrespective of my invitation to make a partial submission." Id. at 24:10-13.  Thus, "just to be clear, [by saying] that [Watson] should tell me by that date everything you can tell me, that's not a promise that whatever information [Watson] omits will not be a problem down the line for his request to call that witness." Id. at 23:25-24:4.  Watson's failure to set forth a complete statement of the opinions he plans to elicit from his proposed experts, as well as the bases and reasons for such opinions, contravenes the Court's clear directions.

Accordingly, Watson's proposed expert testimony should be precluded in its entirety, as many other courts have done under similar circumstances.  See Dzionara-Norsen, 2024 WL 191803, at *4; Vaccarelli, 2021 WL 4805218, at *1; Ulbricht, 858 F.3d at 115; see also United States v. Daskal, No. 21-CR-110 (NGG), 2023 WL 9424080, at *17 (E.D.N.Y. July 12, 2023) (precluding government expert testimony where "disclosure merely lists the topics that [the proposed expert] will testify about without providing the specific opinions that he will render on these topics"); United States v. Mahaffy, No. 05-CR-613 (ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007) (precluding defense expert testimony because "the disclosure statement only proffered general topics and did not describe any opinions that would be offered by the witness on these topics"); United States v. Wilson, 493 F. Supp. 2d 484, 487 (E.D.N.Y. 2006) (precluding defense expert testimony in death penalty case where notice "made no attempt at all to describe 'the bases and reasons for those opinions' as required by Fed. R. Crim. P. 16(b)(1)(C)").

2.      Watson's Experts Should Be Limited to Admissible Testimony

Although it is difficult to know what any of the proposed testimony would actually be, in light of the woefully inadequate disclosures, the partial summaries provided by Watson suggest that much, if not all, of the proposed testimony would be inadmissible.

a.      Expert #1

Watson proffers two bases for admissibility for Expert #1.  First, Watson claims that the testimony will be relevant to materiality, which "will be a key dispute in this case." Second, Watson claims that Expert #1's testimony "will assist the jury in determining whether any of the alleged misrepresentations made to investors were of a kind that a reasonable investor would rely on."  As to materiality, the proposed testimony is likely irrelevant and misleading. And to the extent Watson suggests that the proposed testimony could be relevant to reasonable reliance, reliance is not an element and any arguments relating to reliance should be precluded, as set forth above.  See pp. 14-15.

Materiality is an element of both Count One (securities fraud conspiracy) and Count Two (wire fraud conspiracy).  See United States v. Gramins, 939 F.3d 429, 440 (2d Cir. 2019) (materiality "required under the securities and wire fraud statutes").  A "false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed."  Neder, 527 U.S. at 16; accord United States v. Johnson, 945 F.3d 606, 614 (2d Cir. 2019).  This standard "is an objective one and centers on the views of a hypothetical, reasonable investor in the market at issue."  United States v. Litvak ("Litvak II"), 889 F.3d 56, 68 (2d Cir. 2018).

Thus, for Expert #1's testimony about "the role revenue projections play in financing decisions" to be relevant to a materiality defense, she would need to opine that revenue projections are incapable of influencing the decisions of reasonable investors — a doubtful

20

proposition.  If her testimony were only that revenue projections are one factor among many, or only that opinions vary on the relative important of revenue projections, such testimony would be irrelevant to a materiality defense and potentially confusing to the jury, as even a single data point in a multi-factor decision will still be material if it "significantly alter[s] the 'total mix' of information made available."  Id. at 64.  Similarly, testimony that there "is not a necessary relationship between revenue and amount of funding" (Def. Notice 2) would be irrelevant unless accompanied by testimony that, for reasonable investors, there is no relationship between revenue and amount of funding.  The hypothetical possibility that some companies receive investments without attractive (or any) revenue or projections says little about whether "there is a substantial likelihood that a reasonable investor would find [a] misrepresentation [about revenue] important in making an investment decision."  Litvak II, 889 F.3d at 64.

The Second Circuit's decision in United States v. Litvak ("Litvak I"), 808 F.3d 160 (2d Cir. 2015), is illustrative.  In that case, the Second Circuit found that the district court erred by excluding expert testimony that certain information was "unworthy of consideration in trading decisions" (id. at 182 (emphasis added by Second Circuit)) or "would not have mattered to sophisticated investors" (id. at 185) and erred by excluding testimony by another expert that could have shown that the defendant's misstatements "could not have been reasonably viewed as important in the course of a transaction" (id. at 187).  If Watson proposes similar testimony here — that revenue and revenue projections are "unworthy of consideration," "would not have mattered" to investors or "could not have been reasonably viewed as important" — then such testimony might be relevant.  Testimony short of that, however, would be irrelevant to a materiality defense, and any slight relevance it had would be outweighed by the risk of jury confusion.

Accordingly, the testimony of Expert #1 should be precluded under Rules 402 and 403.

> b.      Expert #2

According to Watson, "Expert #2 will do an analysis of OZY Media's revenue statements" to opine that "the actual revenue of OZY Media was significantly closer to the revenue numbers the government is alleging that Mr. Watson misrepresented to investors."  Def. Notice 2.  Watson proffers that "Expert #2 will assist the jury in determining whether Mr. Watson made any misrepresentations at all," which Watson claims is relevant because the "government must prove, among other things, that Mr. Watson made material misrepresentations to investors."  Id.  Watson misunderstands the law.

Watson is charged with conspiracies to commit fraud.  "[T]he essence of conspiracy is the agreement and not the commission of the substantive offense."  United States v. McDermott, 245 F.3d 133, 137 (2d Cir. 2001).  As a result, a defendant can be guilty of conspiracy even where the substantive crime is never committed and even where commission of the substantive crime was factually impossible.  See United States v. Williams, 553 U.S. 285, 300 (2008) (for "inchoate crimes" such as "conspiracy . . . impossibility of completing the crime because the facts were not as the defendant believed is not a defense"); United States v. Clemente, 22 F.3d 477, 480-81 (2d Cir. 1994) ("'Factual impossibility' is no defense to the inchoate offense of conspiracy under the Hobbs Act.  The government needs to prove only that an agreement to commit extortion existed, not that extortion was actually committed.").  Thus, the ultimate question is not whether Watson ever made misstatements but, rather, whether he agreed that misstatements would be made.

To be sure, evidence of Watson's understanding at the time of the conspiracy of Ozy's true revenues is relevant to whether he agreed to misstate those revenues.  But the focus

must remain on what Watson knew <u>at the time</u>.  Thus, contemporaneous financial statements, contemporaneous records or contemporaneous discussions of revenue would be admissible.  Post hoc analyses, by contrast, are inadmissible and highly confusing to the jury, as courts have recognized.

For example, in <u>United States v. Martoma</u>, 993 F. Supp. 2d 452 (S.D.N.Y. 2014), the court permitted the defendant to introduce materials he reviewed contemporaneously to "shed light on his state of mind."  <u>Id.</u> at 455.  The Court, however, precluded testimony from an expert regarding an analysis conducted after the alleged conduct:  "Professor Gompers's <u>post hoc</u> conclusion that the market for Elan and Wyeth stock was in fact 'overheated' in July 2008 is not probative of Martoma's state of mind because it would not assist the jury in understanding what Martoma was thinking at that time."  <u>Id.</u> at 455-56.  The court continued, "Evidence that Martoma conducted an analysis in July 2008 similar to what Professor Gompers has done in 2014, or that Martoma was reading analyses in 2008 similar to what Professor Gompers has done in 2014, would be probative of Martoma's state of mind.  But Gompers's opinion in 2014 standing alone tells us nothing about Martoma's state of mind in July 2008."  <u>Id.</u> at 456.  Such an after-the-fact analysis would not only be irrelevant but also would "present[] a significant risk of confusing the jury," as it might distract the jury from its proper focus on the defendant's contemporaneous state of mind.  <u>Id.</u> at 456-57; <u>see also</u> <u>United States v. Kaufman</u>, No. 19-CR-504 (LAK), 2021 WL 4084523, at *28 (S.D.N.Y. Sept. 8, 2021) (precluding expert analysis where defendant "did not show" that proposed testimony "would have been probative of anything [defendant] actually knew at the relevant time" because it "invited an inappropriate post hoc analysis of [defendant's] state of mind"), <u>aff'd</u>, No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023).

Due to the failures of Watson's notice, it is difficult to know what analysis Expert #2 will do or what she will say.  But it is apparent that whatever analysis is being proposed has not yet occurred, as no expert has yet been retained.  Because such an analysis would necessarily be post hoc, it can say nothing about what Watson believed at the time of the charged crimes.  The proposed testimony of Expert #2 is thus irrelevant and would be confusing to the jury and should therefore also be precluded under Rules 402 and 403.[5]

c.    Expert #3

Expert #3 is the most cryptic of Watson's proposed experts.  According to Watson, "Expert #3 will testify to the unique issues experienced by historically disadvantaged groups and what the norms of the venture capitalist industry are with regard to 'bluffing' or 'puffery.'  Expert #3 will rely on significant academic literature to opine that the norms and expectations for historically disadvantaged groups are different and distinct from majority entrepreneurs."  Def. Notice 2.  Watson states that "Expert #3 will assist the jury in determining whether Mr. Watson acted in a good faith belief as to what the reasonable expectations are for an entrepreneur who is a member of a historically disadvantaged group."

While it is not possible to confidently predict what Expert #3 will supposedly say, to the extent this expert will suggest that it is somehow acceptable for members of historically disadvantaged groups to lie, that testimony should be precluded for several reasons.

First, as set forth above, it is no defense that other people lie or that lying is common, regardless of one's race or ethnicity.  See pp. 9-12.  Nor would it be a defense to argue

---

[5]    If the defendant contemporaneously reviewed or conducted any analyses indicating that "the actual revenue of OZY Media was significantly closer to the revenue numbers the government is alleging that Mr. Watson misrepresented to investors" (Def. Notice 2), then such contemporaneous analyses may be admissible.  The defendant has not proffered that any such analyses exist, and they have not been provided to the government in response to the subpoenas issued to the defendants or the Court's order to compel.

that Watson's dishonesty was justified by discrimination, or even that he believed his conduct

was justified.  The required mens rea for Count One (securities fraud conspiracy) is willfulness,

see United States v. Kaiser, 609 F.3d 556, 568 (2d Cir. 2010) ("The Securities Exchange Act of

1934 criminalizes only 'willful' violations of its provisions."), and the mens rea for Count Two

(wire fraud) is intent to defraud, see United States v. Novis, No. 20-CR-335 (JMA), 2023 WL

4746541, at *22-23 (E.D.N.Y. July 24, 2023).  Either standard is satisfied where a defendant

believed his "statements were false and fraudulent and [where] he made those statements with

intent to create a deception," without "mistake or good faith" as to truthfulness.  Kaiser, 609 F.3d

at 569-70; United States v. Novis, No. 20-CR-335 (JMA), 2023 WL 6542110, at *2 (E.D.N.Y.

Oct. 6, 2023) ("'Intent to defraud' means to act knowingly and with the specific intent to

deceive, for the purpose of causing some financial or property loss to another.").[6]  Thus, a

defendant's belief that his actions are somehow just or moral does not exempt him from the law

if he knows that his conduct is deceptive.

      Second, although Watson claims that Expert #3 will be relevant to Watson's mens

rea, it is impermissible for an expert to testify as to a defendant's mental state.  See Fed. R. Evid.

704(b) ("In a criminal case, an expert witness must not state an opinion about whether the

defendant did or did not have a mental state or condition that constitutes an element of the crime

charged or of a defense.").  Moreover, Watson proffers no basis for how Expert #3's opinion will

provide circumstantial evidence of Watson's mens rea.

---

[6]    As reflected in the quotation from Novis, wire fraud, but not securities fraud, also
requires an intent to harm victims, which is not relevant for this discussion.  See United States v.
Gramins, No. 21-5, 2022 WL 6853273, at *4 & n.4 (2d Cir. Oct. 12, 2022).

Third, this expert appears to be intended, at least in part, to inject race into this trial.  As discussed above, any arguments based on race are improper, and whatever minimal probative value they might have are well outweighed by the risk of unfair prejudice and jury confusion.  See pp. 3-8.

Accordingly, to the extent the substance of Expert #3's testimony can be inferred from Watson's inadequate notice, it appears that the proposed testimony is irrelevant and any potentially probative value would be substantially outweighed by the risks of prejudice and confusing the jury.  It should therefore be precluded under Rules 402 and 403.

VII.    Statements By the Defendants and Their Agents and Co-Conspirators Are Admissible

The government intends to offer evidence of statements made by the defendants, co-conspirators and Ozy employees in its direct case.  The statements of Watson are admissible against Watson as statements of an opposing party and, insofar as they were on a matter within the scope of his employment by Ozy, are admissible against Ozy as statements of a party's agent. See Fed. R. Evid. 801(d)(2)(A), (D).  The government will also demonstrate by a preponderance of the evidence that Rao and Han were in fact part of the conspiracy and that the statements sought to be introduced are in furtherance of the conspiracy.  See Fed. R. Evid. 801(d)(2)(E).[7] Further, statements by Rao, Han and other Ozy employees or agents are admissible against Ozy

---

[7]    The government does not ask the Court to rule on the admissibility of any particular emails or other out-of-court statements by co-conspirators that the government intends to offer at this time, but merely provides notice of the types of statements the government will seek to introduce.  The Court should admit these statements at the appropriate time.  As the Second Circuit has long held, "statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of" the requirements of Rule 801(d)(2)(E).  United States v. Tracy, 12 F.3d 1186, 1199 (2d Cir. 1993); accord United States v. Vidal, No. 22-2857-CR, 2024 WL 397630, at *4 (2d Cir. Feb. 2, 2024); see also, e.g., United States v. Shyne, No. 05-CR-1067 (KMK), 2007 WL 1075035, at *34 (S.D.N.Y. Apr. 5, 2007) ("A trial court need not . . . make these determinations prior to trial.").

insofar as those statements were on a matter within the scope of the agency relationship, and are also admissible against Watson because Watson controlled Ozy.  See Fed. R. Evid. 801(d)(2)(D). The government further respectfully requests that the Court hold that the defendants may not admit otherwise hearsay statements under these exceptions, either on cross-examination or in the defendants' case-in-chief.

    A.    <u>Applicable Law</u>

       The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c). "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."  Fed. R. Evid. 802.

       Not all out-of-court statements offered for their truth are hearsay.  <u>First</u>, out-of-court statements made by a defendant are not hearsay when introduced by the government in a criminal trial to prove the truth of the facts stated therein because they are admissions of an adverse party.  <u>See</u> Fed. R. Evid. 801(d)(2)(A) (a statement offered against an opposing party that "was made by the party in an individual or representative capacity" is not hearsay); <u>United States v. Kone</u>, 216 F. App'x 74, 76 (2d Cir. 2007) ("Statements made by the defendant, where relevant, may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party.").

       <u>Second</u>, under Rule 801(d)(2)(D), a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed."  Fed. R. Evid. 801(d)(2)(D).  The Second Circuit has explained, "admissibility under this rule should be granted freely."  <u>Pappas v. Middle Earth Condo. Ass'n</u>, 963 F.2d 534, 537 (2d Cir. 1992); <u>accord</u> <u>United States v. Neumann</u>, No. 21-CR-

439 (NSR), 2023 WL 8700974, at *5 (S.D.N.Y. Dec. 14, 2023).  "A sufficient foundation to support the introduction of such vicarious admissions therefore requires only that a party establish (1) the existence of [an] agency relationship [between the declarant and employer], (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency."  Neumann, 2023 WL 8700974, at *5; accord Farganis v. Town of Montgomery, 397 F. App'x 666, 668 (2d Cir. 2010).  "[T]his foundational predicate may be established by circumstantial evidence."  Farganis, 397 F. App'x at 686.

Third, Rule 801(d)(2)(E) excludes from the definition of hearsay statements admitted by the government that were "made by the party's coconspirator during and in furtherance of the conspiracy."  A co-conspirator statement may be admitted by the government if the court finds by a preponderance of the evidence that (1) the conspiracy existed at the time the statement was made; (2) both the declarant and the defendant were part of the conspiracy; and (3) the statement was made in furtherance of the conspiracy.  Bourjaily v. United States, 483 U.S. 171 (1987); see also United States v. Gigante, 166 F.3d 75 (2d Cir. 1998).  While the hearsay statement itself may be considered in establishing the existence of the conspiracy, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy."  Gigante, 166 F.3d at 82.

As to the third "requirement that the challenged statement be 'in furtherance of' the conspiracy," it "is satisfied if the statement's objective is 'designed to promote or facilitate achievement of the goals of the conspiracy.'"  United States v. Malka, 602 F. Supp. 3d 510, 535 (S.D.N.Y. 2022) (quoting United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994)).  Courts in this District have repeatedly held that this standard is "is not very restrictive."  E.g., United States v. Kurland, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897, at *3 (E.D.N.Y. July 11,

2022). "[S]tatements made during the course and in furtherance of a conspiracy must be such as

to prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a

criminal activity." Gigante, 166 F.3d at 82.  "This can include those statements that provide

reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and

cohesiveness, or inform each other as to the progress or status of the conspiracy."  Id.; see also

United States v. Russo, 302 F.3d 37, 46 (2d Cir. 2002) (statements which "inform . . . [co-

conspirators] of the status of the conspiracy are in furtherance of the conspiracy within the

meaning of 801(d)(2)(e)"); United States v. Rahme, 813 F.2d 31, 36 (2d Cir. 1987) (statements

"that apprise a co-conspirator of the progress of the conspiracy" are in furtherance of the

conspiracy).  Relatedly, the Second Circuit has held that a status update is sufficient to satisfy the

"in furtherance" requirement of Rule 801(d)(2)(E).  United States v. Amato, 15 F.3d 230, 234

(2d Cir. 1994); see also United States v. Stewart, 433 F.3d 273, 293 (2d Cir. 2006) (holding that

the statement need not actually further the conspiracy, but instead need only be made with the

intent to further some objective of the conspiracy); United States v. Schlesinger, 372 F. Supp.

711, 720 (E.D.N.Y. 2005).  Notably, "[a] statement need not be made by one co-conspirator to

another co-conspirator in order to be in furtherance of a conspiracy." Malka, 602 F. Supp. 3d at

535; accord Neumann, 2023 WL 8700974, at *3; United States v. Weingarten, 19-CR-497

(NSR), 2024 WL 677995, at *12 (S.D.N.Y. Feb. 15, 2024).

Statements apprising co-conspirators of past events also often further the

conspiracy.  See, e.g., United States v. Jefferson, 215 F.3d 820, 824 (8th Cir. 2000) ("Statements

that describe past events are in furtherance of the conspiracy if they are made . . . simply to keep

coconspirators abreast of current developments and problems facing the group."); United States

v. Salerno, 868 F.2d 524 (2d Cir. 1987) (statements were made to further the goals of the

charged conspiracy where conversations about past events helped to coordinate future criminal activities and brief co-conspirators).  In addition, acts taken to conceal an ongoing conspiracy are acts in furtherance of that conspiracy and, therefore, are relevant and admissible at trial.  See United States v. Eisen, 974 F.2d 246, 269 (2d Cir. 1992) ("[C]learly, acts or statements designed to conceal an ongoing conspiracy are in furtherance of that conspiracy."); United States v. Kahale, 789 F. Supp. 2d 359, 384 (E.D.N.Y. 2009) (holding that "an act taken to conceal an ongoing illegal agreement . . . constitutes an act in furtherance of the charged conspiracy, and is admissible"); United States v. Mermelstein, 487 F. Supp. 2d 242, 261 (E.D.N.Y. 2007) ("Efforts to conceal an ongoing conspiracy may properly be charged as overt acts in furtherance of it.").  This includes statements made in an attempt to "silence witnesses" in an ongoing conspiracy, which also "further[] the goals of the conspiracy."  United States v. Arrington, 867 F.2d 122, 130 (2d Cir. 1988).

        In addition, statements that are not being offered for their truth also are not hearsay.  For example, out-of-court statements made by a third party are not hearsay if offered as circumstantial evidence of the defendant's state of mind or knowledge, rather than for their truth.  See United States v. Detrich, 865 F.2d 17, 21 (2d Cir. 1988).  Similarly, questions or commands do not generally constitute hearsay.  See United States v. Bellomo, 176 F.3d 580, 586-87 (2d Cir. 1999); United States v. Dominguez-Gabriel, 511 F. App'x 17, 20 (2d Cir. 2013); Quartararo v. Hanslmaier, 186 F.3d 91, 98 (2d Cir. 1999).  Statements that are introduced for the purpose of proving that they were made and as a predicate for other proof that they were, in fact, false are also not hearsay because they are not offered for the truth of the matter asserted.  Anderson v. United States, 417 U.S. 211, 219-20 (1974); United States v. Pedroza, 750 F.2d 187, 203 (2d Cir. 1984) (statement "offered for its patent falsity" is not hearsay); see also United States v.

30

Sedaghaty, 728 F.3d 885, 916 (9th Cir. 2013) ("The hearsay rule does not apply to evidence offered to establish a foundation for later showing, through other admissible evidence, that it was false.").  And when a defendant makes statements in the context of a conversation with a third party, the statements of the third party are admissible non-hearsay to the extent that they are necessary to place the defendant's statements in proper context.  See Barone, 913 F.2d at 49; Davis, 890 F.2d at 1373.

B.    Watson's Statements Are Admissible Against Both Watson and Ozy

The government intends to offer at trial various statements made by Watson, including statements to actual and prospective investors and lenders, to actual and prospective business partners and counterparties, to employees and coworkers, to co-conspirators and to the general public.  These statements are plainly admissible against both Watson, see Fed. R. Evid. 801(d)(2)(A), and Ozy, see Fed. R. Evid. 801(d)(2)(D) (statements made by a party's agent or employee).  Although the government will prove at trial that many of Watson's statements were in furtherance of his criminal scheme, they are nevertheless admissible against Ozy because "a statement of illegal activity can still be within the scope of employment and can be admissible under Rule 801(d)(2)(D)."  United States v. Riley, 621 F.3d 312, 338 (3d Cir. 2010); accord 5 Weinstein's Federal Evidence § 801.33(2)(c).

In addition, Watson's misrepresentations regarding Ozy are admissible non-hearsay because they are offered not for their truth, but to show that they were made and as a predicate for other proof that they were false.  Anderson, 417 U.S. at 219-20; Pedroza, 750 F.2d at 203; see also Sedaghaty, 728 F.3d at 916.

31

C.      Rao's and Han's Statements Are Admissible Against Both Watson and Ozy

In addition to Watson's own statements, the government intends to admit numerous text messages, emails and other statements from Samir Rao and Suzee Han that were exchanged between and among themselves and Watson as well as sent to various third parties.

At the outset, all of Rao's and Han's statements made while they were employed by Watson and Ozy, and on matters within the scope of that employment, as reflected in documents or as described during their anticipated trial testimony, are agent or employee statements under Rule 801(d)(2)(D) and therefore not hearsay.[8]  An agency relationship existed between Rao and Han and not only Ozy, but also Watson, who was the founder, controlling shareholder, CEO and face of the company; indeed, the government expects to elicit testimony that Watson was the ultimate decisionmaker regarding Ozy's business, messaging and content, and as of the day of this filing, the landing page for the Ozy website features a large photo of Watson at the center.  See Ozy, https://www.ozy.com/ (last accessed Mar. 8, 2024). Accordingly, statements made by Ozy employees, including Rao and Han, on matters within the scope of their employment are non-hearsay as to both defendants.  See Fed. R. Evid. 801(d)(2)(D); United States v. Rioux, 97 F.3d 648, 660 (2d Cir. 1996) (statements of sheriff's office employees admissible under Fed. R. Evid. 801(d)(2)(D) against defendant, the elected sheriff, where employees "were answerable and directly responsible to [defendant], who directed the Sheriff's office operations" even where defendant did not "control[] the daily tasks of the declarant[s]");  Zaken v. Boerer, 964 F.2d 1319, 1323 (2d Cir. 1992) (statements of company employee admissible against CEO defendant where CEO was "the company's principal owner,

---

[8]      In addition to Rao and Han, statements by other employees and agents of Ozy made on matters within the scope of their employment are also admissible non-hearsay for the reasons described herein.

directed its operations and ultimately made all the final decisions"); In re Reserve Fund Sec. Litig., No. 09-CV-4346 (PGG), 2012 WL 12354233, at *7-8 (S.D.N.Y. Oct. 3, 2012) ("Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant."). As noted above, this includes statements in furtherance of or about illegal conduct. See Riley, 621 F.3d at 338.

For example, the government intends to introduce text messages and emails, as well as elicit testimony, reflecting conversations between and among Watson, Rao and Han regarding misrepresentations to potential and actual investors and lenders regarding Ozy's financial performance (including revenue, cash on hand and profit), ongoing business relationships, acquisition prospects, contract negotiations and other corporate metrics. Such conversations among co-conspirators are all admissible against both Watson and Ozy as statements of a party opponent (insofar as they include Watson's statements), see Fed. R. Evid. 801(d)(2)(A), statements of a party opponent's agents, see Fed. R. Evid. 801(d)(2)(D), or co-conspirator statements, see Fed. R. Evid. 801(d)(2)(E). Indeed, such statements not only constituted planning in furtherance of the charged conspiracies, but they also provided reassurance, induced the assistance of fellow conspirators, fostered trust and cohesiveness among the members of the conspiracy and informed one another of each other's activities. See Gigante, 166 F.3d at 82; see also Russo, 302 F.3d at 46; United States v. Desena, 260 F.3d 150, 158 (2d Cir. 2001).

Similarly, statements by Rao and Han to third parties — including to potential and actual investors, lenders and other counterparties — are admissible in their entirety against both Ozy and Watson under Rule 801(d)(2)(D) and against Watson under Rule 801(d)(2)(E). As to

subsection (E), the government intends to prove that such statements by either Rao or Han were "designed to promote or facilitate achievement of the goals of the conspiracy." Rivera, 22 F.3d at 436. In addition, such statements were intended to "prompt the listener — who need not be a co-conspirator — to respond in a way that promotes or facilitates the carrying out of a criminal activity." United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990). And such statements were also "designed to induce the listener's assistance with respect to the conspiracy's goals." United States v. Gupta, 747 F.3d 111, 125 (2d Cir. 2014). For example, messages in which Rao and/or Han sent knowingly false information to potential investors, including with regard to Ozy's revenues, profits, capital table and ongoing business relationships, are admissible against both Watson and Ozy for the reasons set forth in this paragraph. Further, the investors' responses are admissible as well, not for their truth, but to provide necessary context. See United States v. Paulino, 445 F.3d 211, 216-17 (2d Cir. 2006) ("It has long been the rule that so long as statements are not presented for the truth of the matter asserted, but only to establish a context, the defendant's Sixth Amendment rights are not transgressed."). And such statements are also admissible against both defendants, like Watson's own statements to third parties, not for their truth, but rather as proof that the statements were made and to lay the foundation for additional proof of their falsity. See Anderson, 417 U.S. at 219-20; Pedroza, 750 F.2d at 203.

   D.   Additional Portions of Defendants' Statements Are Inadmissible If Offered by Defendants

   Further, the Court should preclude the defendants from admitting other statements or portions of statements made by the defendants, their agents or co-conspirators, either on cross-examination or in their case-in-chief, because such testimony would constitute hearsay without any exception.

34

It is well established that a defendant generally is prohibited from introducing his own out-of-court statements at trial.  See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").  Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay."  United States v. Mahaffy, No. 05-CR-613 (ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007); see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) ("[W]hile the Government was free to introduce the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on his own.").  Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."  United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005).

Nor, except in extremely limited circumstances, may a defendant introduce his own out-of-court statements as evidence of his state of mind.  The state-of-mind exception to the hearsay rule allows into evidence "[a] statement of the declarant's then-existing state of mind . . . but not including a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).  The state of mind must be relevant, and the statement cannot be offered for any underlying truth independent of the state of mind.  See Funk v. Belneftekhim, No. 14-CV-0376 (BMC), 2018 WL 11169575, at *3 (E.D.N.Y. Nov. 30, 2018) (denying admission of statements under Rule 803(3) because "[n]either statement shows [declarant's] knowledge or state of mind independent from the truth of what it asserts and it is not clear how [declarant's]

state of mind is relevant.").  "The exclusion of statement[s] of memory or belief [proffered] to prove the fact remembered or believed is necessary to prevent the exception from swallowing the hearsay rule.  This would be the result of allowing one's state of mind, proved by a hearsay statement, to provide an inference of the happening of an event that produced the state of mind."  United States v. Cardascia, 951 F.2d 474, 487 (2d Cir. 1991).

A defendant also may not introduce his own statements pursuant to the rule of completeness without complying with its strict terms.  Fed. R. Evid. 106 permits inclusion of otherwise hearsay testimony only where it is "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact."  United States v. Gotti, 457 F. Supp. 2d 395, 397-98 (S.D.N.Y. 2006).  Self-serving statements are not admissible by a defendant unless "their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence."  United States v. Harper, No. 05-CR-6068 (DGL), 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009).  Accordingly, the Second Circuit has excluded hearsay statements offered by the defendant that, by their omission, do not distort the admitted statements.  See United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming district court's decision to exclude portion of defendant's statement where admitted portion did not distort the meaning of the full statement); United States v. Johnson, 507 F.3d 793, 796 (2d. Cir. 2007) (affirming district court's decision to exclude portions of confession that did not explain the admitted portion or place the admitted portion in context, noting that while "[t]he admitted portion of the confession related to . . . plans to execute the robbery, . . . the redacted portion related to the execution of the robbery").  As the Second Circuit has explained, a defendant may not introduce other parts of the same statement offered in part by the government unless the defendant makes a proper showing that the statements he seeks to

36

introduce have a separate basis for admission.  See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that later portions of conversation provided relevant context and noting that "the portions of the tape proffered by [defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay").  The completeness doctrine does not "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." Johnson, 507 F.3d at 796.

Because "Rule 106 does not render admissible evidence that is otherwise inadmissible," United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983), and for the reasons stated above, the Court should preclude the defendants from attempting to admit their own statements under Rule 106, see Gonzalez, 399 F. App'x at 645 (noting that the rule of completeness cannot be used as a "mechanism to bypass [evidentiary] rules").

Finally, a defendant also may not admit his agents' or co-conspirators' statements under Fed. R. Evid. 801(d)(2)(D) or (E).  Such statements would not be an "opposing party" statement as to the defendants.  Thus, for example, courts have held that the "co-conspirator exception is a one-way street down which only the government may travel."  United States v. Persico, No. 04-CR-911 (SJ), 2006 WL 3246922, at *1 (E.D.N.Y. Nov. 8, 2006); see also United States v. James, No. 02-CR-778 (SJ), 2007 WL 2702452, at *1 (E.D.N.Y. Sept. 12, 2007) (a co-conspirator statement made "'during the course and in furtherance of the conspiracy is one type of '[a]dmission by party-opponent' defined as nonhearsay, but only if 'offered against' the party. The statement of a co-conspirator, offered for its truth by a co-conspirator, does not fall within this Rule.").

VIII.   The Government Should Be Permitted to Authenticate Documents Based on Their Production by Either Defendant In Response to Subpoenas

To authenticate a document, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "[T]he bar for authentication of evidence is not particularly high, and proof of authentication may be direct or circumstantial."  United States v. Al-Moayad, 545 F.3d 139, 172 (2d Cir. 2008).

As the Supreme Court has recognized, when a party produces documents in response to a subpoena, that act of production "may implicitly communicate" certain information, including a statement that the produced documents are "authentic."  United States v. Hubbell, 530 U.S. 27, 36 (2000).  Thus, a "jury may draw from the corporation's act of production the conclusion that the records in question are authentic corporate records" so as to meet the requirements of Rule 901(a).  Braswell v. United States, 487 U.S. 99, 118 (1988); see also AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc., 637 F. App'x 645, 650 (2d Cir. 2016) ("the fact that [the challenged document] was produced by [the opposing party] itself" and other details indicating the document related to the opposing party's business was sufficient to authenticate document); 31 Wright & Miller, Fed. Prac. & Proc. Evid. § 7105 ("Authentication also can be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or other discovery request.").

Here, counsel for Ozy and counsel for Watson produced numerous corporate records, including emails, text messages, ledgers and financial statements, in response to grand jury subpoenas.  The implicit statement by counsel that those records were authentic Ozy records is admissible against both Watson and Ozy pursuant to Fed. R. Evid. 801(d)(2)(A) and (D).  As to documents produced by and statements of authentication made by Watson's attorneys, they are admissible against Watson because they are statements produced by his own attorneys in the

38

scope of their representation of him, and they are admissible against Ozy because the documents were produced not in Watson's individual capacity but in his role as a custodian for Ozy.  As to documents produced by and statements of authentication made by Ozy's attorneys, they are admissible against Ozy because they statements by Ozy's own attorneys in the scope of their representation of Ozy, and they are admissible against Watson because (as set forth above) Watson was at all times the key decisionmaker at Ozy.  See pp. 32-33.  The act of production of Ozy records by Ozy or Watson thus suffices to authenticate the documents as to both defendants pursuant to Rule 901(a).

    As to the procedure for how the government will prove that the documents at issue were produced by Ozy or Watson, the government submits that it should be permitted to use the procedure set forth in Braswell.  Braswell stated that the government may establish authenticity by "offer[ing] testimony — for example, from the process server who delivered the subpoena and from the individual who received the records — establishing that the corporation produced the records subpoenaed."  Braswell, 487 U.S. at 118.  Where the documents were received from an individual defendant, the government "may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by" that particular individual.  Id.  Instead, the jury must be told that the corporation produced the documents.

    If the defendants are not willing to stipulate that the documents at issue were produced by Ozy or Watson, the government intends to call a witness who is familiar with the document-management system used by the U.S. Attorney's Office (the "Office"), who will describe the Office's routine practice for filing grand jury returns and identify particular documents produced by Ozy and Watson, based on the locations where the documents are stored

in the Office's files, as materials produced by "Ozy or its custodians" in response to grand jury subpoenas. This witness may also introduce certain email or letter communications by Ozy's attorneys stored in the Office's files identifying specific documents as authentic copies of particular records, such as Ozy's general ledger.[9] Such testimony would be sufficient to establish that the proffered documents are documents produced by Ozy (or Watson, who will not be identified as a custodian) in response to grand jury subpoenas, see Fed. R. Evid. 406 (admissibility of an organization's routine practice to prove that "on a particular occasion the . . . organization acted in accordance with . . . routine practice"), 803(6) (admissibility of records of regularly conducted activity), 901(b)(4) (authentication by characteristics of items), which in turn is sufficient to authenticate the records as authentic Ozy records.

IX.    The Government Should Be Permitted to Introduce an Email from Ozy's Former Chief Financial Officer Reacting to an Attempt to Defraud a Financial Institution

As described in the Indictment, in or about December 2019, Watson directed the then-Chief Financial Officer of Ozy, who the government expects to be a witness at trial, to send a bank a fake signed contract between Ozy and a television network in order to induce the bank to extend a loan to Ozy. See Indictment ¶¶ 43-45. After the then-CFO refused, Watson and Rao nevertheless agreed to send to the bank a fake contract, with numerous terms that were favorable to Ozy, with a forged counterparty signature; Rao sent the forged contract on or about December 30, 2021, copying the then-CFO. The then-CFO responded hours later, requesting that Watson and Rao accept her resignation from Ozy, stating, among other things:

---

[9]     For example, the witness may introduce the email attached hereto as Exhibit A, from Ozy's prior counsel, stating that "The general ledger for 2019 - 2021 was produced at OZY_EDNY-000107310, and the general ledger for 2018 was produced at OZY_EDNY-000132340. Both were produced in native Excel format." The witness, based on her or his review of the Office's email system, will be able to identify the email as an authentic communication from Ozy's prior counsel.

> Carlos, in the spirit of you telling me to be blisteringly honest and direct to get my point across - this (email from Samir to [Redacted] below) is illegal.  This is fraud.  This is forging someone's signature with the intent of getting an advance from a publicly traded bank.
>
> Samir, because you initiated and - then - involved me in this, you compromised me and put me at risk. Why would you ever do that?
>
> This is reckless and unnecessary.  You are getting a formal pick up notice (albeit for an 8 episode show, at a lower budget) TOMORROW before 5 p.m.  Why not wait until then?  Why change the numbers to be so greedy?  To be crystal clear, what you see as a measured risk - I see as a <u>felony</u>.
>
> Did either of you (Carlos, when you asked me to put together a contract and / or Samir, when you sent the email) have any idea (or did it even occur to you to care) that I could go to jail for forgery and bank fraud?  As the CFO!  To reach out to any bank with a forged contract and copy the CFO is (at most) ballsy and (at the worst) a huge underestimation of how I value myself and the security of YOUR company. . . .
>
> I would never even write these things in email, except now I know just how easy it would be for you guys to lie and make up some narrative that you fired me or that I approved of the letter to the network - which I absolutely did not. I needed to put this out there.

<u>See</u> Ex. B.  Hours after the then-CFO sent this email, Rao responded with a cover story, claiming that his sending the signed contract was a mistake without any intent to mislead and that he had already rectified the mistake.  <u>See id.</u>  The government expects to introduce evidence that these statements were not true and that this email furthered the charged conspiracy by attempting to silence the then-CFO and prevent Watson and Rao's fraud from being discovered.  For the reasons discussed below, the Court should allow this email thread to be introduced in full.

<u>First</u>, the full email is admissible under Rule 801(d)(2)(D).  Both Rao and the former CFO were employed by Watson and Ozy at the time, and the email discussed a "matter within the scope of that relationship . . . while it existed."  Fed. R. Evid. 801(d)(2)(D).  Indeed, the matter discussed in the email concerns communications with a potential bank lender

concerning a contract that was being negotiated, which is a matter with which CFO would commonly be involved — and we expect the former CFO to testify that liaising with the bank was within the scope of her duties.  See Pappas, 963 F.2d at 537 (listing the factors to support introduction of statements under Rule 801(d)(2)(D) and noting that "admissibility under this rule should be granted freely"); accord Farganis, 397 F. App'x at 668.  Moreover, the fact that the former CFO emailed Watson her intent to resign demonstrates that she was, in fact, his employee at the time.  Because this email contains messages between Watson's employees regarding an Ozy-related incident that occurred during their employment, it should be admitted under Rule 801(d)(2)(D).

Second, the emails should be admitted under Rule 801(d)(2)(E) as co-conspirator statements because both of Rao's messages in this thread further the charged conspiracy, and the CFO's email provided necessary context for Rao's attempted cover up.  The first-in-time message to the bank, attaching the fraudulent contract, is a message sent in furtherance of the conspiracy to defraud; moreover, it is admissible because it would not be offered for its truth, but rather as evidence that it was said and for its falsity.  Rao's second message in response to the then-CFO's letter is also admissible under Rule 801(d)(2)(E) because, in offering excuses to placate the former CFO, Rao's message was "designed to promote or facilitate the achievement of the goals of the conspiracy" by encouraging the CFO to calm down or otherwise not alert others to the fraudulent behavior.  Rivera, 22 F.3d at 436.  The fact that Rao made this statement to someone outside the conspiracy is of no moment—the statement itself was designed to advance the goals of the conspiracy, and a "statement need not be made by one co-conspirator to another co-conspirator in order to be in furtherance of a conspiracy."  Malka, 602 F. Supp. 3d at 535; accord Neumann, 2023 WL 8700974, at *3; United States v. Weingarten, 19-CR-497

42

(NSR), 2024 WL 677995, at *12 (S.D.N.Y. Feb. 15, 2024); see also Arrington, 867 F.2d at 130 (statements made in an attempt to "silence witnesses" in an ongoing conspiracy "furthers the goals of the conspiracy").  In order to provide necessary context to Rao's two emails, it is appropriate to admit the CFO's email as well.  See Paulino, 445 F.3d at 216-17; Barone, 913 F.2d at 49; Davis, 890 F.2d at 1373.

   Third, the email from the former CFO is admissible as an excited utterance.  "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," is an exception to the rule against hearsay.  Fed. R. Evid. 803(2). "[A]n excited utterance need not be contemporaneous with the startling event to be admissible." United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002); accord United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998); see also United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir. 1990) (citing examples of eleven- and twelve-hour delays between the startling event and the appropriately admitted excited utterance).  "Rather the key question governing admission is whether the declarant was . . . under the stress of excitement caused by the event or condition." United States v. Fell, 531 F.3d 197, 231 (2d Cir. 2008).  "[T]he excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements — i.e., those that 'relate to' the event."  Jones, 299 F.3d at 112 n.3.

   The excited utterance exception applies here.  The government expects that the former CFO will testify that, upon learning that a fraudulent contract had been sent to the potential lending bank, she was extremely agitated, shocked and angry, and that she wrote the attached email while still in this excited state.  Her state of mind is clear from the face of the email, which was written hours after she saw the forged paperwork and includes exclamations and capitalized and underlined words.  The fact that the then-CFO typed an email rather than

exclaimed her statement aloud is not relevant — "[e]mails can qualify as . . . excited utterances." United States v. Figueroa, No. 23-CR-161 (MAD), at *2 (S.D.N.Y. Dec. 4, 2023).  As the email states, the former CFO witnessed what she believed was a fraud and a felony and felt implicated in the conduct.  Such an event is surely sufficiently startling to put someone in an excited state for an extended period, and her statement related to that startling event.  Her statement should therefore be admitted under Rule 803(2).

Fourth, the former CFO's email should be admitted because it is not being offered for its truth, but rather to show that Watson had knowledge of the fraudulent conduct at issue. The government expects that Watson may argue, among other things, that he was not aware of the fraud that was perpetrated by his and Ozy's employees, including Rao.  The former CFO's email, which adds Watson to the chain, demonstrates his knowledge and is relevant evidence of his state of mind.  Moreover, the government would not admit the former CFO's email for the truth of the assertion that sending a forged contract was illegal, fraud and/or a felony; rather, it would show Watson's knowledge of — and acquiescence to, if not participation in — this conduct.

For these reasons, the Court should permit the government to admit as evidence the email exchange attached as Exhibit B.[10]

---

[10]     The Second Circuit has held that such "red-flag" evidence is highly probative and is properly admitted under Rule 403.  See United States v. Graham, 51 F.4th 67, 83 (2d Cir. 2022) (approving admission of email from outside attorney stating that defendant's conduct was illegitimate).

X.      The Government Should Be Permitted to Introduce Contemporaneous Statements by
        Victims

        A.      Applicable Law

                1.      Present Sense Impressions

        Rule 803(1) of the Federal Rules of Evidence provides an exception to the general

rule against hearsay for any statement "describing or explaining an event or condition, made

while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  "By its own terms,

application of Rule 803(1) has three distinct requirements: i) the statement must describe or

explain the event perceived; ii) the declarant must have in fact perceived the event described; and

iii) the description must be 'substantially contemporaneous' with the event in question."  United

States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994).  Because "in many, if not most,

instances precise contemporaneity is not possible, . . . a slight lapse is allowable between the

event perceived and the declarant's statement."  Id.  "[T]here is no per se rule indicating what

time interval is too long."  Id.

        The reason for this exception is twofold.  First, the immediacy requirement

reduces the opportunity for reflection, and thus minimizes the likelihood of deception or

fabrication on the part of the declarant.  Second, immediacy also reduces the likelihood that the

declarant will have inaccurately remembered the event in question.  See United States v. Jones,

299 F.3d 103, 112 (2d Cir. 2002) ("Such statements are considered to be trustworthy because the

contemporaneity of the event and its description limits the possibility for intentional deception or

failure of memory.").

                2.      Excited Utterances

        As noted above, Rule 803(2) of the Federal Rules of Evidence provides another

exception to the rule against hearsay for excited utterances.  An excited utterance is a statement

45

"relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To qualify as an excited utterance, the proponent of an out-of-court statement must establish the following: i) that a startling event occurred; ii) that the declarant made the statement while under the stress of the excitement caused by the startling event; and iii) that the declarant's statement relates to the startling event. See United States v. Brown, 254 F.3d 454, 458 (2d Cir. 2001).

"The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability. An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." Tocco, 135 F.3d at 127.

3.      Then-Existing Mental, Emotional, or Physical Condition

Federal Rule of Evidence 803(3) provides that the following type of statement does not constitute hearsay:

> [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) . . . .

Fed. R. Evid. 803(3).

Rule 803(3) also permits the admission of out-of-court statements "reflecting a declarant's intentions or future plans" and allows such statements to be introduced, where relevant, "to prove subsequent acts." United States v. Cicale, 691 F.2d 95, 103 (2d Cir. 1982). Under Rule 803(3), "if relevant, a declarant's statement of his intent may be introduced to prove that the declarant thereafter acted in accordance with the stated intent." United States v. Persico, 645 F.3d 85, 100 (2d Cir. 2011); see also Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 299-300 (1892) (stating principle that statements of intent are reliable, competent evidence).

Further, "[a] declarant's statement of intent may . . . be admitted against a non-declarant when there is independent evidence which connects the declarant's statement with the non-declarant's activities." United States v. Delvecchio, 816 F.2d 859, 863 (2d Cir.1987); see also Persico, 645 F.3d at 100-01; United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000) (collecting cases upholding the admission of statements of intent regarding future illegal transactions, where corroborated by circumstantial evidence, as evidence of the non-declarant defendant's participation in such transactions); United States v. Sperling, 726 F.2d 69, 73-74 (2d Cir. 1984) (holding admissible declarant's statement of intent against non-declarant where corroborated by independent evidence); Cicale, 691 F.2d at 103-04 (same).

4.     Prior Consistent Statements

Pursuant to Federal Rule of Evidence 801(d)(1)(B), a statement is not hearsay under the following circumstances: (1) "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement"; (2) the statement "is consistent with the declarant's testimony"; and (3) the statement is offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B).

Under subsection (i) of Rule 801(d)(1)(B), "[p]rior consistent statements of a witness may be admitted if offered to rebut an implication of recent fabrication or improper motive." United States v. Forrester, 60 F.3d 52, 64 (2d Cir. 1995). The rule includes a temporal requirement: the prior consistent statement "must have been made before the declarant developed the alleged motive to fabricate." Id.; see also Tome v. United States, 513 U.S. 150 (1995).

Subsection (ii) of Rule 801(d)(1)(B), which was added in 2014, provides a second basis for admissibility. "Rule 801(d)(1)(B)(ii) allows for the substantive use of prior consistent

statements that are probative for rehabilitative purposes other than those specifically enumerated in subsection (i)."  United States v. Purcell, 967 F.3d 159, 196 (2d Cir. 2020).  Such rehabilitative purposes include the need "to rebut defendants' attacks on the declarant's credibility and memory."  Id.

      B.    Discussion

      The government intends to admit several exhibits containing contemporaneous written or recorded statements by victims describing their interactions with Watson and his co-conspirators.  Illustrative examples of text message chains containing such statements are attached as Exhibits C, D, F, G and H, and transcripts of illustrative recorded voice memos containing such statements are attached as Exhibit E.  All of these statements are admissible as present sense impressions or as excited utterances.  Moreover, to the extent any are not admissible under those exceptions, they would be admissible as prior consistent statements to the extent the defense challenges the credibility of the declarants, all of whom are expected to testify at trial.

      1.    Statements by Employees of Financial Institution 1

      Exhibits C and D are text messages between employees of Financial Institution 1 that were sent during the February 2, 2021 call where Rao, at Watson's direction, impersonated a media executive and during the immediate aftermath.

      For example, in Exhibit C, the messages from approximately 7:15 p.m. UTC (2:15 p.m. EST) to 7:30 p.m. UTC (2:30 p.m. EST) record the contemporaneous reactions of the call participants to the call.  See Ex. C at 2-13.  From approximately 7:53 p.m. UTC (2:53 p.m. EST) to 11:23 p.m. UTC (6:23 p.m. EST), the declarants discuss their reactions to the call and the subsequent investigation in real time.  See id. at 14-22.  Their descriptions of the call as it happens, their investigation as it is occurring, and their descriptions of their reactions to the call

are admissible pursuant to Rules 803(1) and 803(3).  In addition, their statements in response to the call are also admissible pursuant to Rule 803(2) because it is apparent that the declarants are in a highly excited state as they speak, exclaiming, "Wtf [what the fuck] is this" and "I'm freaking out," "Insane!!!," "I'm not over this," and repeatedly exclaiming, "Omg [Oh my god]" or "OMG."  The government also anticipates that the declarants will testify at trial that they were in an extremely excited state in response to the call.

In Exhibit D, one of the call participants describes a contemporaneous call with Rao, which is admissible as a present sense impression.  See Ex. D at 2 ("I'm on the phone with Samir he just called me.").  Later, this call participant describes a call with Identity Theft Victim 2 immediately after hanging up, which is also admissible as a present sense impression.  See id. at 4-10.  In addition, the declarant remains in an excited state from the fraudulent call earlier in the day and appears to be further agitated by the information shared by Identity Theft Victim 2 that his company had no business relationship with Ozy, despite Watson's claims.  See id. at 8 ("They have no contracted relationship with them . . . ."), 10 ("This is insane.").[11]  The remainder of the exhibit consists of discussions about their ongoing activities and their plans for addressing the situation, all of which is admissible pursuant to Rules 803(1) and 803(3).

2.      Statements by Employees of Investment Fund 1

Exhibits E, F and G are summaries of calls an employee of Investment Fund 1 had with Watson or Rao sent by text or by voice memo immediately after the calls occurred.  In

---

[11]      Some portions of the declarant's summary of the call consist of hearsay within hearsay, in that the declarant is reporting statements made by Identity Theft Victim 2.  These statements are also admissible because Identify Theft Victim 2 was also in an excited state when he spoke, rendering his statements admissible pursuant to Rule 803(2).  See Ex. D at 6 ("He [Identity Theft Victim 2] called me he's very upset.").  The government anticipates that Identity Theft Victim 2 will testify that the experience of being impersonated was both upsetting and terrifying and that he was in an excited state the entire time he addressed it.

several of the voice memos, the summary begins with the declarant stating, "I just talked to, uh, Carlos," "I just got off the phone with Samir from Ozy," and "I just got off the phone with Carlos," demonstrating how quickly the memo was sent after the call ended.  Ex. E at 1, 2, 4. Similarly, one of the text message chains begins, "Just got off zoom with Carlos."  Ex. G at 1. The government also anticipates that this employee will testify at trial that it was his practice to send these messages contemporaneously.  In most of these texts and memos, the employee relays materially false information provided directly by Watson.

As courts have repeatedly held, notes or summaries of conversations or other events made right after the conversations or events occurred are admissible present sense impressions.  See SEC v. AT&T, Inc., 626 F. Supp. 3d 703, 738 & n.41 (S.D.N.Y. 2022) (admitting as present sense impressions notes taken "during, or right after, conversations with defendants to enable them to capture their takeaways"); see also United States v. Kehoe, 562 F.2d 65, 70 (1st Cir. 1977) (stenographer's notes that person was sworn written "shortly after the event" admissible as present sense impression).  Accordingly, these text messages and voice memos relating to misstatements by Watson and Rao should be admitted as present sense impressions pursuant to Rule 803(1).

### 3.   Statements by Employees of Series D Investor 1

In Exhibit H, an employee of Series D Investor 1 provides contemporaneous updates to his boss regarding a call the employee is then having with Watson, during which Watson falsely claims to have spoken to the CEO of Technology Company 1.  See Ex. H at 1 ("Carlos telling me that [Technology Company 1] is showing heightened interest in ozy . . . [Redacted] ([Technology Company 1] ceo) just called carlos directly . . . Will call you as soon as he's [Watson] done . . . Asking him once he's done giving me update.").  Similar to the real-time

summaries discussed above, this discussion of Watson's false statements as they were being made is admissible pursuant to Rule 803(1).

XI.  The Government Should Be Permitted to Introduce Evidence of Specific Acts of Dishonesty and Abuse by Watson and His Conspirators

A.  Conduct In Furtherance of the Conspiracy

As noted above, Counts One and Two charge the defendants with conspiracy, "the essence of [which] is the agreement and not the commission of the substantive offense." McDermott, 245 F.3d at 137.  In order to prove that agreement, the government may admit evidence of acts taken in furtherance of the charged conspiracy as circumstantial evidence of the underlying agreement, whether or not those acts are described in the indictment.  See United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) ("Where, as in this case, the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."); see also United States v. Smothers, 652 F. Supp. 3d 271, 283 (E.D.N.Y. 2023) ("evidence of uncharged crimes was admissible to show the existence of the conspiracy with which the defendants were charged").  Such conduct taken in furtherance of the scheme "is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."  Diaz, 176 F.3d at 79.

Accordingly, evidence of specific instances of Watson, Rao or Han lying to investors or lenders, discussing such lies or attempting to conceal such lies, along with other acts in furtherance of the charge conspiracies, whether or not set forth in the Indictment, are all admissible as direct evidence of the charged crimes.  Further, evidence of Watson acting abusively to Rao and Han during the course of the conspiracy is admissible to show the relationship among Watson, Rao and Han and to show the methods by which Watson directed the conspiracy and controlled his co-conspirators.  See United States v. Escalera, 536 F. App'x

51

27, 32 (2d Cir. 2018) (evidence admissible to show nature and background of relationship among conspirators).

      B.    <u>Other Acts</u>

      1.    <u>Legal Standard</u>

Evidence of uncharged crimes or other acts may be admitted pursuant to Rule 404(b) for the purpose of proving a fact other than a defendant's propensity.  <u>See</u> Fed. R. Evid. 404(b)(2).  The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application, and applies an "inclusionary approach" to admitting "other acts" evidence under Rule 404(b).  <u>See</u> <u>United States v. Garcia</u>, 291 F.3d 127, 136 (2d Cir. 2002) (citing <u>United States v. Pitre</u>, 960 F.2d 1112, 1118 (2d Cir. 1992)); <u>see also</u> <u>United States v. Levy</u>, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").

A party must satisfy three requirements for evidence of "other crimes, wrongs or acts" to be admitted under the rule.  First, the evidence must be offered for a purpose other than to prove a defendant's bad character or criminal propensity.  <u>See</u> <u>United States v. Mickens</u>, 926 F.2d 1323, 1328 (2d Cir. 1991); <u>United States v. Colon</u>, 880 F.2d 650, 656 (2d Cir. 1989).  Second, the evidence must be relevant under Rules 401 and 402 and not run afoul of Rule 403.  <u>See</u> <u>Mickens</u>, 926 F.2d at 1328; <u>Levy</u>, 731 F.2d at 1002.  Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction.  <u>See</u> <u>Mickens</u>, 926 F.2d at 1328-29; <u>Levy</u>, 731 F.2d at 1002.

As relevant here, evidence of an uncharged act is also admissible to prove knowledge or intent (<u>i.e.</u>, state of mind) if the uncharged act is "sufficiently similar to the

conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence." United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994); see also United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996) (explaining similarity rule for knowledge and intent proof is "simply a rule of relevance"). Other acts evidence is also admissible under Rule 404(b) to "corroborate crucial prosecution testimony" if the corroboration is "direct and the matter corroborated is significant." United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987).

2.    Discussion

Even beyond acts directly in furtherance of the conspiracy, other acts of dishonesty by Watson relating to Ozy are admissible under Rule 404(b).  The government anticipates calling several former Ozy employees or contractors as witnesses to testify to instances where they observed Watson lying about Ozy or where they were directly instructed by Watson to lie about Ozy.  For example, Watson falsely claimed that his talk show would air on a well-known cable network in order to lure staff and celebrity guests.  Similarly, Watson instructed employees to falsely claim that specific big-name celebrities were attending Ozy Fest in order to lure in sponsors or other celebrity participants.  In sum and substance, Watson told employees "you lie or you lose."  Although these false statements were not directed to investors or lenders, and were therefore arguably not directly in furtherance of the conspiracy, they are nevertheless admissible to show Watson's fraudulent knowledge and intent, as well as to corroborate other testimony, under Rule 404(b).  Evidence showing Watson's belief that lying was necessary to not "lose" is also admissible to prove his motive.

"Where[, as here,] it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." Graham, 51 F.4th at 82. Evidence that Watson regularly lied about other aspects of Ozy's business and directed others to

lie on his behalf would undermine any defense that Watson did not know or intend that investors or lenders would be lied to.  See id. (approving admission of evidence of other dishonesty committed concurrently with the charged fraud to show "fraudulent intent" and to rebut defense that defendant "lacked the requisite mental state for a fraud conspiracy conviction"); United States v. Jackson, 792 F. App'x 849, 853 (2d Cir. 2019) (approving admission of evidence of prior fraud conviction to show knowledge and intent and to rebut arguments that defendant's involvement in fraud was inadvertent).

    The testimony of other employees will also corroborate anticipated testimony that Watson brought Rao and Han into the conspiracy in part by persuading them that lying to investors was necessary to save Ozy and was part of how business was done.  Anticipated evidence that Watson told other employees that lying was necessary and acceptable strongly corroborates the anticipated testimony that he made similar arguments to Rao and Han. Watson's direct involvement in recruiting Rao and Han (as opposed to being duped by them) will likely be among the critical disputes at trial, and corroboration on this "significant" issue is therefore admissible.  Everett, 825 F.2d at 660.

    Similarly, anticipated testimony regarding instances of Watson acting abusively towards employees — such as yelling, demeaning and threatening employees — is admissible to corroborate anticipated testimony that Watson controlled and manipulated Rao and Han through similar acts.  As the government will seek to prove at trial, the general atmosphere at Ozy was one where employees were expected to agree with whatever Watson said or asked and that those who did not were punished.  For example, one former employee would testify that Watson urged her to be "part of the trend of yes," which the employee understood to mean to not question and say yes to whatever management said.  When this employee subsequently said she wanted to

leave the company, Watson yelled at her and threatened to ruin her life.  Watson's common practice of using verbal abuse to control employees and his role in directing Rao and Han and their subservience to him will be critical and disputed issues at trial, and corroboration of Watson's methods of control and manipulation of Rao and Han is properly admissible.  See id.

The probative value of this evidence is not outweighed by the potential for prejudice.  Evidence of other acts is admissible under Rule 403 so long as the evidence "[does] not involve conduct any more sensational or disturbing than the crimes with which [the defendant has been] charged."  United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992).  Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is admissible under the Rule 403 balancing test.  See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction"); United States v. Larson, 112 F.3d 600, 603 (2d Cir. 1997) (in a case involving the sexual molestation of a minor, upholding the admission of testimony related to uncharged sexual conduct where the defendant had used similar methods of enticing his victims with, among other methods, sporting equipment and alcohol because such evidence demonstrated a common scheme or plan); United States v. Ozsusamlar, 428 F. Supp. 2d 161, 167-68 (S.D.N.Y. 2006) (holding that evidence of previous extortion scheme that included threats of violence was admissible in a prosecution for murder for hire and extortion when prior threats of harm made in connection with collection of debt were very similar to allegations in current prosecution).  Here, none of the anticipated testimony from other employees will be

particularly sensational or disturbing, let alone more sensational or disturbing than the evidence of the underlying offense.

In addition, any potential prejudice from this highly probative testimony can be mitigated with an appropriate limiting instruction.  See United States v. Williams, 526 F. App'x 29, 35 (2d Cir. 2013) (no undue prejudice where "the court administered an appropriate limiting instruction"); United States v. Sterling, No. 22-CR-247 (EK), 2023 WL 1967526, at *4 (E.D.N.Y. Feb. 12, 2023) ("To mitigate any risk of unfair prejudice, I will deliver a limiting instruction to the jury as to the narrow purposes for which it may consider this evidence."); United States v. Crumble, No. 18-CR-32 (ARR), 2018 WL 2016852, at *4 (E.D.N.Y. May 1, 2018) ("[T]o the extent that the jury could possibly construe this evidence as establishing [the defendant]'s propensity . . . a proper limiting instruction as to the limited purposes for which this evidence is being introduced can dispel this potential prejudice.").

The government should therefore be permitted to admit evidence of Watson lying about Ozy to individuals other than investors and lenders, as well as evidence of Watson instructing employees to lie and evidence of Watson using abusive tactics towards other employees as a method of control.

XII.   The Government Should Be Permitted to Elicit Testimony From Victims Regarding
       Their Views on Materiality

As discussed above, one of the required elements that the government must prove is materiality.  See pp. 20-21.  Materiality "is an objective [standard] and centers on the views of a hypothetical, reasonable investor in the market at issue."  Litvak II, 889 F.3d at 68.  The government may permissibly establish what a reasonable investor would consider material through testimony by victims regarding what they considered important.  See id. at 66 ("[T]estimony of various counterparty representatives was sufficient to sustain a finding of

56

materiality on the counts of securities fraud."); see also Litvak I, 808 F.3d at 177 (finding that government established materiality where "counterparties' representatives testified at trial that they considered the misrepresentations meaningful in the course of those transactions and that they or their employers were harmed by Litvak's misleading course of conduct").  This is because the views of individual victims are "relevant to the nature of the market involved and as to the beliefs of a reasonable investor."  Litvak II, 889 F.3d at 69.

At trial, the government intends to ask victim witnesses whether certain information provided by Watson or his coconspirators was important to their investment decision, or whether information of that type (e.g., revenue or profit) is normally important to them.  The government respectfully submits that this testimony should be admitted as proof of materiality.

XIII.   The Court Should Preclude Evidence and Argument Regarding Any Purported Belief of "No Ultimate Harm" to Investors

Watson might attempt to present evidence or argument that he lacked intent to defraud because he had a good faith belief that Ozy would ultimately be profitable and that he never intended the victims to ultimately suffer any loss.  This argument, and any argument along those lines, should be barred as improper and irrelevant; in fact, case law has repeatedly recognized that a defendant's belief that victims will ultimately make money is not a defense to fraud charges.  The Court should therefore preclude evidence and argument concerning any purported belief of the defendants that investors would ultimately profit.

In the Second Circuit, "[t]he law is clear: a defendant cannot negate the fraud he committed by wishing that everything works out for his victim in the end."  Gatto, 986 F.3d at 118; see United States v. Calderon, 944 F.3d 72, 90 (2d Cir. 2019) ("[T]he fact that the defendant believes (rightly or wrongly) that he will 'ultimately' be able to work things out so that the

victims suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct."); cf. Shaw v. United States, 580 U.S. 63, 67 (2016) (noting that the bank fraud statute, which is analogous to the wire fraud statute, "demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss").  Thus, a defendant's good faith belief in the possibility of a venture's profits does not equate to good faith regarding their representations to investors and potential investors.  See, e.g., Sterritt, 2023 WL 7386660, at *2 (granting motion in limine to preclude evidence or argument about defendant's perceived profitability of his business venture; "a defendant's good-faith belief that his or her representations are truthful is distinct from a defendant's belief that knowingly false statements will ultimately cause no harm, or even that such statements will ultimately benefit, investors"); United States v. Watts, 934 F. Supp. 2d 451, 470 (E.D.N.Y. 2013) ("[A] defendant's good-faith belief in the truth of his statements or representations is very different from a defendant's belief that his untrue statements or representations will ultimately cause no harm."); United States v. Gole, 21 F. Supp. 2d 161, 166 (E.D.N.Y. 1997) ("The definition of good faith addresses the defendant's belief in the truth of the representations, and not the defendant's belief as to the ultimate success of the plan."); United States v. Berger, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) (finding that a guilty verdict on securities fraud charges based on the fact that the defendant intentionally caused others to issue false or misleading statements to investors would be proper regardless of evidence of the defendant's belief that his investment strategy would be successful financially).

        In situations where a defendant has improperly presented evidence or argument of his or her good faith belief in the success of a scheme involving false statements to victims or investors, the Second Circuit has routinely upheld use of a "no ultimate harm" charge, which

instructs the jury that "a belief of a defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith.  No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by [the defendant]."  United States v. Leonard, 529 F.3d 83, 91 (2d Cir. 2008) (finding that instruction in a securities fraud trial was appropriate where the defendants, who had defrauded investors in a movie by misleading them about how investment monies would be spent, had argued at trial that they had a good faith belief that the movie would be completed); see also United States v. Lange, 834 F.3d 58, 78-79 (2d Cir. 2016) (no ultimate harm instruction appropriate where "there was evidence that [the defendant's] co-conspirators intended to immediately deprive investors of their capital through fraud, even if they truly believe that in the long term [the businesses] would ultimately succeed, deriving profits for the defrauded investors"); United States v. Shkreli, 779 F. App'x 38, 40 (2d Cir. 2019) (holding that instruction in securities fraud and wire fraud trial was appropriate where defendant argued that "that despite his many misrepresentations and omissions to" investors, "he did not have the requisite intent to defraud those investors because he believed that the investors would ultimately make money from their investments"); United States v. Levis, No. 10-4819-CR, 2012 WL 2914118, at *3 (2d Cir. July 18, 2012) (finding that instruction was appropriate where the defendant, who had made misrepresentations regarding the independent valuation of his company to investors, had argued at trial that he did not believe any harm would befall investors).

Thus, any purported belief that Ozy would ultimately turn a profit for investors has no bearing on whether Watson lied to investors about, inter alia, Ozy's financial performance, its contracts and relationships with counterparties, and the existence and extent of

others' investments.  There is no reason to wait for the jury to hear such an improper argument, which would only serve to mislead and confuse; rather, such an argument should be precluded in advance of trial.  See Fed. R. Evid. 403.

XIV.    The Court Should Preclude Evidence and Argument That Watson Did Not Profit From the Scheme

As set forth above, Watson is charged with conspiracies to defraud, which focus on his agreement to defraud.  Thus, "the success of the conspiracy is irrelevant."  United States v. Arroyo, 477 F. App'x 771, 773 (2d Cir. 2012); see also United States v. Ulbricht, 31 F. Supp. 3d 540, 564 (S.D.N.Y. 2014) ("As with any conspiracy, the actual success or failure of the venture is irrelevant.").  Accordingly, any evidence or argument that the conspiracy ultimately failed to achieve its goals is irrelevant and should be precluded under both Rules 402 and 403.

In particular, the Court should preclude any evidence or argument that Watson did not ultimately profit from Ozy or that he lost money during his time in Ozy.  As the evidence at trial will show, Watson owned a majority of the common stock and therefore clearly would have profited if Ozy had succeeded.  In addition, the evidence will show that Watson repeatedly attempted to obtain multi-million dollar payouts as part of fraudulent investments.  While the defendants would certainly be entitled to challenge such evidence, any evidence or argument that the plan failed and that Watson in fact lost money would have no relevance to his guilt and could mislead the jury into believing that a conviction requires proof of success of the conspiracy.

The government therefore respectfully requests that the Court preclude any evidence or argument that the conspiracy did not succeed, including any evidence or argument that Watson did not profit or ultimately lost money.

XV.   The Court Should Preclude Evidence or Argument Concerning the Circumstances of Watson's Arrest or the Legality of the Attendant Search

As discussed above, following extensive briefing, the Court denied Watson's motion to suppress the evidence seized from his devices at the time of his arrest.  The defendants should therefore be precluded from relitigating those issues — namely, from arguing, commenting or eliciting testimony about the legality of the search and seizure of Watson's devices.  Similarly, the defendants should be precluded from offering evidence about or discussing the circumstances of his arrest, including, but not limited to, the government's decision not to permit Watson to self-surrender and the timing of his arrest.

A.   Circumstances of Watson's Arrest

The circumstances surrounding Watson's arrest are inadmissible because they are irrelevant.  The fact that Watson was arrested at a certain time, for example, says nothing to make a fact of consequence in the case, such as whether he conspired with his co-conspirators to deceive investors, more or less true.  See Fed. R. Evid. 401; see also United States v. Reevey, 364 F.3d 151, 157–58 (4th Cir. 2004) (evidence of circumstances of defendant's arrest was inadmissible as confusing and misleading because the defendant "was not charged with any offense arising out of the circumstances surrounding his arrest").  Moreover, the clear purpose for the defense to introduce evidence about the circumstances of Watson's arrest would be to attempt to invoke sympathy from the jury, an improper purpose that should be precluded not just because it is irrelevant, but also because any conceivable probative value of such evidence would be substantially outweighed by the unfair prejudice of such a ploy for sympathy.  See Fed. R. Evid. 403.

As with evidence related to the circumstances of Watson's arrest, evidence related to the government's decision not to permit Watson to self-surrender is irrelevant.  Such evidence

does nothing to make a fact of consequence in the case more or less true.  See Fed. R. Evid. 401,

403.  Evidence about the government's decision not to contact Watson prior to his arrest or to

coordinate his surrender would plainly be offered for the improper purpose of suggesting to the

jury that there is something unfair or targeted about Watson's prosecution, an improper purpose.

> B.  Legality of the Search and Seizure of Watson's Devices

Federal Rule of Evidence 104 makes clear that the Court decides "preliminary

questions" outside the presence of the jury, including whether evidence is admissible.  Whether

the search and seizure of Watson's devices was lawful is one such preliminary question, and the

Court decided this issue, denying Watson's motion to suppress after reviewing extensive briefing

from the parties.

To permit the defense to introduce evidence suggesting, or to argue to the jury,

that the search and seizure was unlawful or otherwise improper would flout Rule 104 and invite a

needless and irrelevant mini-trial on the scope of the Fourth Amendment and whether law

enforcement properly obtained the evidence in this case.  See United States v. Lights, No. 15-

CR-721 (RWS), 2016 WL 7098633, at *1-2 (S.D.N.Y. Dec. 5, 2016) ("The stop and subsequent

searches were all based on valid probable cause.  This issue has been litigated and decided.  No

reference to the illegality of the stop or subsequent searches will be permitted at trial."); see also

Lego v. Twomey, 404 U.S. 477, 489 (1972) (finding that after a trial judge has ruled on a

defendant's claim, the defendant is not "entitled to have the jury decide the claim anew");

Stewart, 433 F.3d at 313.  The same problems would emerge if the defendants were to argue that

law enforcement employed improper, unconstitutional or nefarious or nefarious tactics in

conducting their investigation.  Any such argument would be irrelevant under Rule 401 and have

no bearing on the question at issue.  Additionally, any arguable probative value would be

substantially outweighed by the risks enumerated in Rule 403, including unfair prejudice,

confusion of the issues, and misleading the jury, as well as undue delay and waste of time.  See also Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Ultimately, permitting the defense to relitigate the suppression issues already decided by this Court would distract the jury from the questions actually presented and invite the jurors to decide the case based on their feelings about law enforcement investigations rather than the facts.  The Court should therefore preclude such argument.

XVI.   The Court Should Preclude Evidence or Argument Concerning Whether the Defendants Should Have Been Prosecuted Somewhere Other than this District

In court filings and public statements, Watson has suggested that the case against him should have been brought in another District.  See ECF No. 84-1 at 30 (stating that other individuals "have much stronger ties to EDNY than does Mr. Watson"); The Troubling Case of Carlos Watson, Too Black for Business, https://www.tooblackforbusiness.org/cw/the-carlos-watson-case (Watson writing that he was indicted by "federal prosecutors on the other side of the country").  Accordingly, the government anticipates that the defendants may challenge the government's evidence of venue at trial, or more broadly suggest that the case should have been brought in a different district.  While the law permits the defendant to argue that venue has not been proved by a preponderance of the evidence,[12] the Court should preclude arguments that the case would have been better brought elsewhere.

---

[12]   "The government bears the burden of proving venue, but need only establish it by a preponderance of the evidence."  E.g., United States v. Purcell, 967 F.3d 159, 186 (2d Cir. 2020).  Venue can be established in a number of ways.  For example, venue is proper in any district where electronic communications are sent or received.  See, e.g., United States v. Lange, 834 F.3d 58, 70 (2d Cir. 2016); United States v. Royer, 549 F.3d 886, 895 (2d Cir. 2008).  Venue is also appropriate in any district through which electronic communications are routed.  See, e.g., United States v. Brown, 293 F. App'x 826, 829 (2d Cir. 2008); United States v. Ohle, 441 F. App'x 798, 802 (2d Cir. 2011).  Venue also lies in the district where a telephonic communication in furtherance of a crime was made and where it was received.  Lange, 834 F.3d at 70; see also

First, any argument that the defendants should be acquitted because the case should have been brought in another district suggests that only a single venue is appropriate in a given case. That is not the law. The Second Circuit has "instructed that venue may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location.'" United States v. Thompson, 896 F.3d 155, 171 (2d Cir. 2018); accord United States v. Kirk Tang Yuk, 885 F.3d 57, 69 (2d Cir. 2018). Thus, "where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue." United States v. Reed, 773 F.2d 477, 480 (2d Cir. 1985).

To permit legally improper argument as to venue will confuse the jury and undermine the Court's jury instructions. At the close of the evidence, the government expects that the Court will provide the jury with a clear venue instruction based on the controlling law of this Circuit. Any argument from the defendants that the case should have been brought in some other District (as opposed to focusing on whether venue exists in this District) will be inconsistent with those expected instructions and thereby risk "confusing the issues, misleading the jury, undue delay [and] wasting time." Fed. R. Evid. 403. This risk is especially high here; although the government will clearly establish venue in a number of ways, including acts in furtherance of the conspiracy and the location of victims in the Eastern District of New York, the defendants are out-of-state residents and many of the acts in furtherance of the charged crimes occurred outside of this District. As such, the probative value of such arguments or evidence

---

United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007); United States v. Smith, 198 F.3d 377, 382 (2d Cir. 1999). In addition, courts in this Circuit have routinely found that passing through a district is sufficient to confer venue. See, e.g., United States v. Kirk Tang Yuk, 885 F.3d 57, 71-72 (2d Cir. 2018); United States v. Tzolov, 642 F.3d 314, 320 (2d Cir. 2011); United States v. Duque, 123 F. App'x 447, 449 (2d Cir. 2005).

from the defendants (which is none) is substantially outweighed by the dangers of prejudice, confusion and delay, and they should be precluded.  See Fed. R. Evid. 401, 403.

Second, arguments or evidence related to the claim that the case should have been brought elsewhere or that prosecution in this District is unfair would create an improper risk of jury nullification.  It is well-settled that "it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence."  Sparf v. United States, 156 U.S. 51, 102 (1895); United States v. Carr, 424 F.3d 213, 220 (2d Cir. 2005).  Courts have consistently held that while juries may have "the power to misapply the law," that power does not give rise to a right to do so.  Thomas, 116 F.3d at 615-16; see also Dunn v. United States, 284 U.S. 390, 393 (1932) (describing jury nullification as the "assumption of power" which a jury has "no right to exercise").  "[N]o juror has a right to engage in nullification[] and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court."  Thomas, 116 F.3d at 616.  Indeed, "trial courts have the duty to forestall or prevent such conduct," and the Second Circuit has "categorically" rejected "the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."  Id. at 614, 616; see also United States v. Edwards, 101 F.3d 17, 19 (2d Cir. 1996).  Here, where the Court will instruct the jury as to the law of venue and ask the jury to apply the facts to the law, an argument by the defendant to the jury that his prosecution in this Court is unfair or should have happened elsewhere would be an argument for jury nullification. Such an argument should not be tolerated.

For the foregoing reasons, while the defendants should be permitted to contest venue, they should not be permitted to elicit evidence or present arguments to the jury that they

should have been prosecuted in a different District or that it is unfair for them to be prosecuted in this Court for reasons unrelated to the technical venue requirements.

XVII.   Defendants Must Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced During Their Case-in-Chief

    Consistent with Rule V(E)(1) of the Court's Individual Rules and Practices, the government respectfully request that the Court order the defendants to disclose defense exhibits, including exhibits they intend to introduce through cross-examination of government witnesses, no later than 10 days before jury selection — i.e., on or before May 10, 2024.

    Federal Rule of Criminal Procedure 16(b) governs a defendant's disclosures in a criminal case.  In relevant part, it requires the defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial."  Fed. R. Crim. P. 16(b)(1)(A).  The Rule's purpose "is to avoid surprise and gamesmanship" and "it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial."  United States v. Hsia, 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000).

    Of course, Rule 16 does not require a defendant to disclose documents he intends to use for purposes of impeaching a government witness (just as Rule 16 does not require the government to disclose documents it intends to use to impeach defense witnesses).  But to the extent that a defendant seeks to admit into evidence a document while cross-examining a witness during the government's case-in-chief in order to affirmatively support the defendant's theory of the case, such a document falls within the ambit of Rule 16 and must be produced.  As the District Court for the District of Columbia has explained:

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may

> be used to support her defense . . . . The cross-examination of these
> and other government witnesses therefore is properly seen as part
> of defendant's case-in-chief if it buttresses her theory of the case.

Hsia, 2000 WL 195067, at *2 (quoting Black's Law Dictionary 207 (7th ed. 1999)).  The Hsia

court distinguished documents introduced by a defendant via a government witness — which do

fall within Rule 16 and should be disclosed — from documents used by a defendant "merely to

impeach a government witness, and not as affirmative evidence in furtherance of [the

defendant's] theory of the case, [which] is not part of [the defendant's] case-in-chief."  Id. at *2

n.1.

Courts in this district have repeatedly recognized this distinction, ordering the

production of defense exhibits "that will not be used solely for impeachment purposes," even if

the defense intends to introduce such exhibit during cross-examination.  United States v.

Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); see also

United States v. Warren, No. 22-CR-231 (DLI), ECF Order (E.D.N.Y. Sept. 6, 2023) (ordering

disclosure of defense exhibits in felon-in-possession trial six days prior to jury selection); United

States v. Thorpe, No. 19-CR-492 (HG), Pretrial Conference Tr. 41 (E.D.N.Y. Aug. 23, 2023)

(granting government's motion for disclosure of Rule 16 discovery and defense exhibits two

weeks before trial, explaining, "It's not only exhibits that you would introduce if you called a

witness, but it's exhibits that you know you're going to introduce through, let's say, the case

agent. . . . It's not only what you're going to put on once the Government says, 'the Government

rests.'"); United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y.

Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment

exhibits they intend to use in their defense at trial, whether the exhibits will be introduced

through a government witness or a witness called by a Defendant.").  That obligation extends to

material produced by the government in discovery that the defense intends to use as an exhibit.

See Smothers, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").

Numerous other district courts outside of this District have interpreted Rule 16(b) similarly.  See United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross-examination of a government witness other than for impeachment purposes."); United States v. Holden, No. 13-CR-444 (AJB), 2015 WL 1514569, at *4 (D. Or. Mar 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, No. 12-CR-319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (stating that the approach adopted in Holden, Swenson, and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, No. 15-CR-568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same).

Here, the government first requested defendants' Rule 16 materials with its first discovery letter on April 21, 2023, and have renewed that request with every production since; to date, the defendants have not disclosed a single document, apart from the documents the Court ordered the defendants to produce in response to grand jury subpoenas.  The defendants' failure to provide reciprocal discovery may be a result of having none to produce; they may not intend to introduce any evidence at trial, as is their right.  The defendants, however, cannot rely upon an undefined defense strategy to avoid producing documents in compliance with the spirit and letter of Rule 16 and the Court's Individual Rules.

Accordingly, to avoid gamesmanship, unfair surprise and undue delay during the trial, the government respectfully requests that the Court order the defendants to identify any

defense exhibits they intend to introduce during the government's case (but not those documents to be used for impeachment purposes only) or any defense case no later than May 10, 2024, ten days before jury selection.[13]

The government further respectfully submits that, to avoid gamesmanship and delay during the trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other than Watson himself.  See Fed. R. Crim. P. 26.2.  The government proposes that the Court order that government and defense Rule 26.2 material be exchanged simultaneously on a date agreed-upon by the parties or, if necessary, set by the Court.  See United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 120 at 1-2 (E.D.N.Y. July 31, 2019) (ordering simultaneous exchange of Rule 26.2 material).

Finally, to avoid any unnecessary objections or delays during opening statements, the government respectfully requests that the Court order that the parties mutually exchange any demonstratives each party intends to use during opening statements no later than May 20, 2024. See United States v. Aguilar, No. 20-CR-390 (ENV), ECF No. 238 at 1-2 (E.D.N.Y. Jan. 2, 2024) (ordering exchange of opening-statement demonstratives after completion of jury selection).  The government respectfully submits that such demonstratives should not include any exhibits, as exhibits generally may not be shown to the jury during opening statements. See id. at 1 ("Aguilar may not during his opening statement show or reference by exhibit number exhibits marked for use at trial."); Williams v. Vahey, No. 20-CV-2560 (KAM), 2023 WL 130834, at *1 (E.D.N.Y. Jan. 8, 2023).

---

[13]     To the extent the defendants identify any exhibits that should have been produced in response to the Court's order to compel (see ECF No. 81) but were not (or to the extent the defendants attempt to use such exhibits for impeachment), the government respectfully submits that use of such exhibits should be forbidden.  The defendants should not be permitted to gain a tactical advantage by flouting the Court's order.

XVIII. <u>Improper Use of Agent Reports to Impeach Witnesses Should Be Precluded</u>

In accordance with its obligations under Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500, the government will produce summaries of witness interviews prepared by law enforcement.  The government respectfully requests that the Court preclude the defense from introducing the contents of these reports to impeach such witnesses during cross-examination, publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them.

A party may impeach a witness with a prior inconsistent statement of that witness, but the statement must be the witness's own statement that he or she either made or adopted.  <u>See</u> Fed. R. Evid. 613; <u>United States v. Alamonte</u>, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"); <u>United States v. Leonardi</u>, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]," it was "properly rejected as a prior inconsistent statement").  The problem with using a third party's summary or characterization of the witness's statement to impeach is "one of relevancy": "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible."  <u>Alamonte</u>, 956 F.2d at 29.

The Jencks Act governs the discoverability of a witness's prior statements, and its definition of "statement" accords with Fed. R. Evid. 613(a) and applicable case law on proper impeachment using prior inconsistent statements.  Under the Jencks Act, a statement means "a written statement made by said witness and signed or otherwise adopted or approved by him," a

recording or transcription that "is substantially [a] verbatim recital of an oral statement made by

said witness and recorded contemporaneously," or a statement made by a witness to the grand

jury.  See 18 U.S.C. § 3500(e).  Because the Jencks Act is meant to restrict the defendant's use of

discoverable statements for impeachment, "only those statements which could properly be called

the witness' own words should be made available to the defense for purposes of impeachment."

Palermo v. United States, 360 U.S. 343, 349, 352 (1959).  An "agent's interpretations and

impressions" of a witness do not fall within the purview of the Jencks Act.  Id. at 352-53.

        In this case, the government has provided the defense with broad discovery,

which will be supplemented when the government provides material pursuant to 18 U.S.C.

§ 3500, including reports summarizing investigators' interviews with government witnesses.

These reports were not reviewed or adopted by any of the government witnesses.  Moreover,

they were finished after interviews were completed and reflect the thought processes and

interpretations of the agents and officers; they do not constitute verbatim recitals or transcripts of

any of the witnesses' statements.[14]  As a result, the statements in these reports are not statements

of any of the government's witnesses (other than the reports' authors, if called to testify at trial),

cannot be used for impeachment, and should not be read aloud or shown to the jury.  See

Alamonte, 956 F.2d at 28; Leonardi, 623 F.2d at 757.  The Court should therefore preclude any

---

[14]        These reports would, however, constitute prior statements of the agents or officers
who prepared the report if they are called as a witness to testify regarding the subject matter
contained in the report.

use or suggestion by defense counsel that a statement in a law enforcement summary report is a statement of the witness being interviewed.[15]

XIX.   The Court Should Preclude Evidence or Argument Concerning Possible Punishment and Collateral Consequences

The government moves to preclude any discussion or argument concerning possible collateral consequences or punishment which may result from a conviction in this case. Such argument or evidence is irrelevant and therefore inadmissible.

Where the jury has no role at sentencing — such as in this case — it "should be admonished to reach its verdict without regard to what sentence might be imposed."  Shannon v. United States, 512 U.S. 573, 579 (1994).  This is for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion."  Id. Ultimately, any reference during trial to possible punishment may only "prejudice, distract, or confuse the jury."  United States v. Jadusingh, No. 18-CR-257 (KAM), 2020 WL 207950, at *3 (E.D.N.Y. Jan. 14, 2020).  Accordingly, "[f]ederal courts usually instruct juries not to consider a verdict's consequences."  United States v. Blume, 967 F.2d 45, 49 (2d. Cir. 1992).

The Court should preclude the defendants and their counsel from referencing the possible punishment or consequences which will accompany a guilty verdict.  Although the defendants have not stated their intention to reference the possible consequences of their convictions at trial, the government moves to preclude any mention of sentence out of an

---

[15]      The government acknowledges that the defense may ask a witness whether he or she made a statement that is reflected in a law enforcement report.  However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the report's contents as a prior inconsistent statement.  Additionally, if a witness says that he or she does not remember a fact, the defense may attempt to refresh a witness's recollection by showing the witness the report, but only if the defense does so in a manner that does not imply that the report is the witness's own statement or publish its contents to the jury.

abundance of caution, especially considering that the aggravated identity theft count with which Watson is charged carries a mandatory two-year prison term.  Any reference to sentencing will serve to confuse the jury and undermine its role as the trier of fact.  Discussion of the consequences of a conviction could invite the jury to consider nullification, a violation of the Court's instructions and an outcome the Court is duty bound to prevent.  Thomas, 116 F.3d at 616.  Therefore, the Court should preclude the defendants from referencing potential punishment or collateral consequences at trial.

XX.    Business Records and Public Can Be Authenticated Pursuant to Fed. R. Evid. 902(4), 902(11) and (13)

At trial, the government intends to authenticate certain certified business and electronic records pursuant to Fed. R. Evid. 902(11) and (13).  A table listing the producing entities, the Bates ranges for the records as produced in discovery, and the Bates ranges for the applicable certifications is set forth in Exhibit I.[16]  The government will produce additional certifications as they become available.

The government also intends to introduce certified copies of public records, specifically, Ozy's filed tax returns, pursuant to Fed. R. Evid. 902(4).  These certified records were produced to the defendants under Bates numbers USAO-EDNYOZY000000254 to USAO-EDNYOZY000000611 and can be provided to the Court upon request.

The Supreme Court has held that admitting business records and public records that have been authenticated by affidavit or certificate does not violate a defendant's right to confrontation.  See Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).  The Court has explained that "[b]usiness and public records are generally admissible absent confrontation . . .

---

[16]    To the extent the defendants oppose admission of any of these records, the government is prepared to provide any or all of the certifications to the Court upon request.

because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial." Id. at 324.

Relying on Melendez-Diaz, the Second Circuit and at least five other circuits have concluded that certifications authenticating records are not testimonial and therefore are permissible. See, e.g., United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015); United States v. Johnson, 688 F.3d 494, 504-05 (8th Cir. 2012); United States v. Yeley-Davis, 632 F.3d 673, 680-81 (10th Cir. 2011); United States v. Morgan, 505 F.3d 332, 339 (5th Cir. 2007); United States v. Ellis, 460 F.3d 920 (7th Cir. 2006); United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005). As the Seventh Circuit explained in Ellis, an authenticating certification under Rule 902(11) is "nothing more than the custodian of records . . . attesting that the submitted documents are actually records kept in the ordinary course of business" and "merely establish the existence of the procedures necessary to create a business record." 460 F.3d at 927. It is the underlying records, not the certification, that are introduced to establish the facts at trial.

Consistent with this understanding of the confrontation right, federal law permits the authentication of business and electronic records by certification and sets forth specific requirements for their admission. Federal Rule of Evidence 902(11) expressly permits the authentication of domestic business records by certification, and Rule 902(13) expressly permits the authentication of electronic records by certification. Courts in the Second Circuit have routinely applied these provisions to admit certified business records at trial. See, e.g., United States v. Komasa, 767 F.3d 151 (2d Cir. 2014); Qualls, 613 F. App'x at 28 (affirming district court decision to allow government to offer into evidence foreign business records based upon a certification, absent a live witness to authenticate the documents). Similarly, Rule 803(6)(D) provides that a document may be qualified as a record of a regularly conducted activity "by a

74

certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D); see also United States v. Michel, 879 F. Supp. 2d 291, 304 n.13 (E.D.N.Y. 2012) (bank representative's signed declaration under penalty of perjury sufficiently laid foundation for admission of bank records). Thus, "Rule 902(11) extends Rule 803(6) by allowing a written foundation in lieu of an oral one." United States v. Rom, 528 F. App'x 24, 27 (2d Cir. 2013).

Likewise, under Federal Rule of Evidence 902(4), certified copies of public records — including "a copy of a document that was recorded or filed in a public office as authorized by law" — are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted" so long as they are "certified as correct by . . . the custodian or another person authorized to make the certification." This rule applies to filed tax returns such as the ones here and does not implicate the confrontation clause. See United States v. Jimenez, 513 F.3d 62, 79-80 (3d Cir. 2008).

The government should therefore be permitted to authenticate the business and electronic records set forth in Exhibit I and the public records described above using certifications because it is proper under the law. As noted, the government has provided the defendants, and will continue to provide as they become available, the certifications and underlying records in discovery, and the defendants are hereby informed of the government's intention to offer them as evidence at trial. Such a process would eliminate unnecessary witnesses and help the case proceed in an efficient manner without the need for wasteful

sidebars.  Accordingly, the government seeks a pretrial ruling that these records may properly be authenticated as self-authenticating public, business and electronic records.[17]

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions <u>in limine</u>.

Dated:       Brooklyn, New York
             March 8, 2024


                                     BREON PEACE
                                     United States Attorney
                                     Eastern District of New York

                        By:     /s/_____
                                     Jonathan Siegel
                                     Gillian Kassner
                                     Dylan A. Stern
                                     Assistant U.S. Attorneys
                                     (718) 254-7000

---

[17]       In addition to authentication, the government will also need to establish relevancy prior to admitting documents at trial.  The government anticipates that the relevancy of each record will be plain at the time they are moved into evidence.